UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re:                                                                          Chapter 7

ALFRED PLACERES,
                                          Debtor.                        Case No. 15-10691-SMB
_____

JOSE BORGES,
                                          Plaintiff,                     Adversary Proceeding
                                                                               No.
      -against-


ALFRED PLACERES,
                                          Defendant.
_____

**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTING TO
DEBTOR'S DISCHARGE PURSUANT TO SECTIONS 523 AND 727 OF THE
BANKRUPTCY CODE**

**JURISDICTION**

1.      On March 23, 2015, the Debtor filed a voluntary petition (the "Petition") for relief under

        chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States

        Bankruptcy Court for the Southern District of New York.

2.      On August 23, 2015, the Debtor's duly-noticed meeting of creditors was held pursuant to

        Section 341(a) of the Bankruptcy Code (the "Section 341 Meeting").

3.      As of the date of this Complaint the Debtor has not been granted a discharge.

4.      This Complaint is timely because the date by which a Complaint objecting to the Debtor's

        discharge or to determine dischargeability of a debt expires on October 13, 2015.

5.      This is an adversary proceeding and an objection to the discharge, in which Plaintiff-Creditor

1

is objecting to Defendant-Debtor's discharge under Bankruptcy Code, 11 U.S.C. §§ 727(a)(3),

727(a)(5), and 727(a)(12), § § 523(a)(4), (6) and (7), and 11 U.S.C. § 707(a).

6.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and

Bankruptcy Code 11 U.S.C. §§ 523 and 727.

## PARTIES

7.     Plaintiff Jose Borges is a native of Venezuela and a citizen of the United States.    His

principal place of residence is in the town of Fairlawn, Bergen County, New Jersey.

8.     Defendant Debtor is an attorney who has been practicing immigration law in New York for

approximately forty years, and who previously and unsuccessfully represented Plaintiff in his

immigration case.    Plaintiff then sued Defendant for legal malpractice, and in 2012 was

awarded $1,250,206 in damages.

9.     Plaintiff is a judgment creditor of the Debtor, in the amount of $1,250,206.00.    Debtor is also

indebted to Plaintiff's attorney in the amount of $2,900, for legal fees awarded against him in

in a contempt motion in connection with enforcement of the judgment.

## FACTS

i.     **Plaintiff's immigration case and his representation by Defendant.**

10.     In 1997, Plaintiff, a Venezuelan citizen, was seeking an attorney to represent him on his

immigration case at the Immigration Court in Newark, New Jersey.    Plaintiff had been placed

in removal proceedings after having overstayed his student visa.    At the time, Plaintiff was

planning to marry his then-fiancé, which would have allowed him obtain permanent residence

in the US and which was thus a simple and straightforward defense to the immigration court

case.

2

11.     On January 10, 1998 Plaintiff met with Adela Ivan, owner of a company called Entra

America, who told him she worked as a paralegal for Defendant, a well-known immigration

lawyer.    Her business card stated "Entra America immigration.    Adela Ivan, president,

Alfred Places Esq." and gave an address of 1138 Broadway, New York, New York and a

phone number of 212-463-9068.    (Exhibit A)     Believing that he was hiring Defendant,

Plaintiff retained Ivan to represent him in Immigration Court and the application for

permanent resident based on the pending marriage.

12.    Plaintiff duly paid the requested fees, although he never met with Defendant.    Instead, Ivan

gave him a copy of a Motion to Change Venue and a Notice of Appearance, both signed by

Defendant, to take to the Immigration Court with him for the next court hearing, on January

27, 1998.    Despite the Notice of Appearance, Defendant did not attend this court hearing, and

Plaintiff instead went there alone. The Immigration Judge refused to change venue, and

instructed Plaintiff to return to Court with his attorney the following week, on February 3,

1998 or he would be deported.

13.    Plaintiff immediately contacted Ivan and asked to speak with Defendant.    Ivan constantly

told him that Defendant was unavailable, but that he had instructed her to tell Plaintiff that he

did not have to return to Court on February 3 because his green card application would be

filed before then.    Plaintiff married two days later, and he and his wife immediately went to

the Entra America office to sign all the paperwork for his green card application.    Ivan

reiterated that Defendant had said Plaintiff didn't have to return to Immigration Court as his

green card application would be filed immediately.

14.    All of the immigration petitions and immigration court documents that were filed on

3

Plaintiff's behalf named Defendant as Plaintiff's attorney and contained what purported to be Defendant's signature, a P.O. Box (P.O. Box 7806, FDR Station, New York, New York) as Defendant's address, and the phone number for Ivan and Entra America ((212) 463-9018), which Plaintiff assumed was also the phone number for Defendant.

15.    Plaintiff then got receipts for his green card application, and in April 1998, he received a letter from INS telling him to appear for deportation to Venezuela, whereupon he immediately went to the Entra America office, and was assured that the matter would be easily rectified by Defendant.    Plaintiff then paid additional fees for Defendant to file a motion to reopen.

16.    A "motion to reopen to reconsider" was subsequently filed, ostensibly by Defendant. (Exhibit B)    However, this "motion" did not provide the required explanation for Plaintiff's failure to appear at the February 3rd court hearing, did not point to any basis on which Plaintiff would be eligible for relief from deportation, such as the pending green card application, and did not in fact even ask for the *in absentia* order to be vacated.    Unsurprisingly, it was denied, but Ivan informed Plaintiff that it had been granted.

17.    Only one motion to reopen a removal order is allowed in Immigration Court, and such a motion must be filed within 90 days of the order sought to be reopened.

18.    Plaintiff assumed Ivan was correct, and that the motion had been granted, as he received further notification that his green card application was being processed, and in February 2000, he attended an interview (represented by a different attorney, Jamal Jbara, also from the Entra office) in connection with his green card application.    After an interview, the immigration officer told Plaintiff and his wife that the application had been approved and that he would get his green card in the mail.

4

19.   In April 2000, Plaintiff needed to go to Venezuela because of his mother's illness and so he contracted Mr. Jbara, as he still had not received his green card, whereupon he was told for the first time that the order of deportation had never been vacated, but that another motion to reopen would be filed.   Although he paid additional fees for this, second, motion to reopen, no such motion was ever filed.   Plaintiff's mother died, and he was not able to return to Venezuela for her funeral.   The previous year Plaintiff had also tried to go back to Venezuela, when his father had died in a car accident, but again he was unable to obtain necessary travel documents.

20.   In July 2002, Plaintiff changed lawyers and discovered for the first time that the order of removal remained outstanding, and that his immigration case had been mishandled from the very beginning.   He also learned that Defendant had never actually worked out of the Entra America office, but that instead his office was in upper Manhattan, at 2710 Broadway, that the two immigration court motions, to change venue and to reopen the removal order, were factually incorrect, had no legal basis, and were completely meaningless, and that the marriage-based forms contained misleading information about his immigration status, and had been filed in the incorrect venue.

21.   In January 2003, through his new attorney, Plaintiff filed another motion to reopen and vacate the *in absentia* order, alleging fraud and ineffective assistance of counsel as the basis to reopen as well as to excuse the untimeliness.

22.   In order to comply with the requirements for motions to reopen based on ineffective assistance of counsel in immigration cases, Plaintiff filed a complaint against Defendant with the lawyers' disciplinary committee in New York, alleging the facts as essentially set forth above,

5

and that Defendant had not actually performed any of the work on his case, that the address on these immigration forms (P.O. Box 7806, FDR Station, New York, New York) was not Defendant's, and that he had never met Defendant or been to his office.

23.    Defendant responded to this complaint, dismissing Plaintiff's allegations as "frivolous and without merit", insisting that he had done all of the work on Plaintiff's case, stating that he had stopped representing Plaintiff because he believed the marriage was fraudulent, and annexing receipts for payment of legal fees that Plaintiff had never made.    Defendant also insisted that the PO Box address was indeed his, and that he had been using it for 20 years because of difficulty getting mail at his office address.    As required by law, this response was submitted to the Immigration Court as part of the Motion to Reopen.

24.    Defendant made these statements to the Disciplinary Committee knowing that they were untrue and misleading, that they would be considered by the Immigration Court and Board of Immigration Appeals in deciding Plaintiff's motion to reopen, and that they would minimize Plaintiff's likelihood of success on that motion and thus result in his deportation.    Defendant made these statements in order to minimize his own wrongdoing, with reckless disregard of their consequences to Plaintiff, and in fact with the intent that they would cause his deportation and thus insulate Defendant from any further allegations of wrongdoing.

25.    Plaintiff's motion to reopen was denied, and in May 2003 he appealed this denial to the Board of Immigration Appeals.

26.    In June 2003, Plaintiff lost his job as an engineer, because he was unable to renew his work permit because of the outstanding order of deportation.

27.    In August 2003, Plaintiff commenced a civil action ("the civil action") against Defendant,

6

Adela Ivan, Entra America, and Jamal Jbara, in New York State Supreme Court, based on the above facts, and asserting causes of actions for negligence, legal malpractice, breach of contract, negligent supervision, intentional and negligent infliction of emotional distress, fraud, breach of fiduciary duty, and treble and punitive damages.

28.   In January 2004, Defendant filed an answer in the civil action, and shortly thereafter, in February 2004, immigration officials apprehended Plaintiff at his home, took him to an immigration detention center, and told him that he would be deported to Venezuela within the next few days based on the outstanding removal order.   Plaintiff immediately had a severe anxiety attack and had to be taken to a secure psychiatric facility for other detainees and for criminals with psychiatric problems, where he remained for 88 days.   While there he was under guard 24 hours a day, took medication for anxiety and for depression, and attempted suicide two times.   As a result, Plaintiff was put on suicide watch, and when he was discharged back to the detention center, he continued to see a psychiatrist, took sleeping pills and antidepressants for the remainder of the time he was in immigration custody.   Plaintiff remained in immigration custody for another 322 days.

29.   In March 2004, while Plaintiff was detained, the Board of Immigration Appeals denied his appeal (of the denial of the motion to reopen), largely because of the statements that Defendant had made in response to his complaint, and also because it was untimely, and numerically barred.   Plaintiff filed an appeal of this denial with the Third Circuit Court of Appeals by way of Petition for Review, which granted him an immediate stay of deportation.

30.   As a result of discovery in the civil action, Plaintiff obtained copies of the documents Defendant had submitted to the Disciplinary Committee in their investigation of him,

including copies of what Defendant had claimed were Plaintiff's immigration petitions and immigration court papers that he had maintained in his file.    On several of these documents, the phone number and/or address for the Entra America office had been erased and replaced with the phone number and/or address for Defendant's own office, at 2710 Broadway. Copies of the actual documents that were filed with the INS are annexed hereto as Exhibit C, and copies of the altered documents that were submitted to the Disciplinary Committee are annexed hereto as Exhibit D.

31. On or about the same time, Plaintiff sought information from the US Postal Service about the rental of the P.O. Box had been listed as Defendant's address on the immigration forms and immigration court papers filed on Plaintiff's behalf.    The documents produced showed that it had in fact been rented by Adela Ivan until July 2004, when Defendant took over the rental, and at which time Plaintiff was still in immigration custody.

32. Defendant knew at that time (July 2004) that Plaintiff had been detained and was facing deportation to Venezuela.    Defendant took over the rental of the P.O. Box in order to further frustrate the outcome of Plaintiff's immigration case and to hide his own wrongdoing, and with reckless disregard for the consequences to Plaintiff.

33. On April 5, 2005, the Third Circuit Court of Appeals granted the Petition for Review, finding that the time within which to file a motion to reopen could be equitably tolled, and remanding the case back to the Board of Immigration Appeals, noting that it had "granted Borges's motion to supplement the record with newly discovered evidence supporting his allegations of fraud. We instruct the BIA to consider this evidence in making its findings of fact on the issue of fraud.    If the BIA finds fraud and finds that, by virtue of equitable tolling, the motion to

reopen was timely filed, it is instructed to vacate the *in absentia* order of removal so that

Borges can apply for adjustment of status."   <u>Borges v. Gonzales</u>, 402 F.3d 398, 409 (3d Cir.

2005).   Plaintiff was immediately released from immigration custody.

34.   The BIA then reopened the case and remanded it to the Immigration Judge, who vacated the

removal order on January 26, 2006, so that Plaintiff could – finally – be granted permanent

residence in the US.   In September 2006, Plaintiff's application for adjustment of status was

approved, and in 2012 he became a US citizen.

35.   Defendant's actions, in falsifying the documents submitted to the Disciplinary Committee, and

assuming the rental of the PO Box, were designed to make it appear as if he, and not Ivan, had

done all of the work on Plaintiff's immigration case.

36.   Defendant's statements in his responses to the Disciplinary Committee were also made with

the intention of frustrating Plaintiff's motion to reopen, so that he would be deported to

Venezuela, in order to insulate Defendant from any further allegations of wrongdoing.

37.   If Defendant had told the truth in his responses to the Disciplinary Committee, and admitted

that he had never met with or spoken to Plaintiff or his wife, that it was Ivan and not he who

had done all of the work on Plaintiff's case, that at all material times the PO Box had been

rented by Ivan, not by him, that he had no firsthand knowledge about the bona fides of

Plaintiff's marriage, or about anything to do with Plaintiff's immigration case, the

Immigration Court or the Board of Immigration Appeals would have granted his motion to

reopen, and Plaintiff would not have lost his job or been detained.

**ii.       Plaintiff's civil action against Defendant.**

9

38.     The civil action was dismissed as to Ms. Ivan in 2005, and settled by Mr. Jbara in 2010.[1]  A

        trial date was then set for February 2012.    On January 31, 2012, Defendant filed his first

        motion in that case, for leave to amend his (January 2004) answer, and for summary judgment.

        That motion was denied on the basis that the attorney making the motion had not been

        properly substituted for counsel of record, and that it was untimely.

39.     On February 24, 2012, the trial court *sua sponte* dismissed the causes of action for negligence,

        breach of contract, negligent supervision, breach of fiduciary duty and infliction of emotional

        distress as redundant/duplicative of the legal malpractice claim.    The Court ruled that

        Plaintiff could recover damages for the emotional distress caused by his confinement on the

        malpractice claim, without objection by Defendant's counsel, and for that reason held that the

        emotional distress claim was redundant/duplicative of the malpractice claim.    The Court

        reiterated this decision on February 27, again without any objection by Defendant's attorney.

        All of Plaintiff's exhibits, including his psychiatric records, were admitted into evidence,

        without objection from Defendant's attorney.

40.     The trial court's decision to allow recovery for non-pecuniary damages on the malpractice

        claim was based on a then-recent decision from the Appellate Division, Fourth Department,

        which allowed such a claim to proceed where the damages arose from incarceration resulting

        from legal malpractice, Dombrowski v Bulson, 79 A.D.3d 1587, 915 N.Y.S.2d 778 (4th Dep't,

        2010).    At the time of the trial, this was the only New York State court decision to allow such

---

[1]  In 2009, Jbara filed for bankruptcy in the Eastern District of New York, Case Number
1-09-48496-DEM; Plaintiff filed an adversarial proceeding, Case Number 10-1004-DEM, and the
automatic stay was lifted, allowing the civil action to proceed; Mr. Jbara then settled the civil action
with Plaintiff.

a claim to proceed, and it was already under appeal to the New York Court of Appeals.   It was directly contrary to the law in the First Department, where the action was pending, that "A cause of action for legal malpractice does not afford recovery for any item of damages other than pecuniary loss so there can be no recovery for emotional or psychological injury.", Wolkstein v Morgenstern, 275 A.D.2d 635, 637, 713 N.Y.S.2d 171 (1st Dept. 2000).

41.    It was also the law in the First Department (and New York State) at that time that "[T]here is no exception to the necessity for an objection to preserve an error [in a jury instruction] merely because the law in effect at the time of trial subsequently changes", Kroupova v. Hill, 242 A.D.2d 218, 661 N.Y.S.2d 218 (1st Dept. 1997), lv dismissed in part and denied in part, 92 NY2d 1013.   Nonetheless, Defendant made no objection to the trial court's ruling that it would allow the jury to award Plaintiff damages for pain and suffering resulting.

42.    At trial, Plaintiff testified essentially to the facts of his representation as set forth above.   He testified in detail about his detention and custody, involuntary psychiatric hospitalization, suicide attempts, mental health treatment and ongoing mental health problems even after he had been released from detention, as well as the financial losses incurred as a result of his loss of employment, and the legal fees incurred in trying to resolve his immigration status once he had changed lawyers, all without objection from defense counsel.   All of his psychiatric records, tax returns, and proof of payment of legal fees, were admitted into evidence, again without any objection from defense counsel.

43.    Plaintiff also presented an expert witness, who testified, in sum, that if Defendant had attended Plaintiff's immigration court hearing and sought an adjournment on account of the pending marriage, the Immigration Judge would have been bound to grant it.   She also testified that if

Defendant's motion to reopen the *in absentia* order had alleged that Plaintiff had received incorrect legal advice, to the effect that he did not need to attend his immigration court hearing, the Immigration Judge would likewise have been bound to grant the motion to reopen.    Thus, the expert opined that Defendant's failure to have done either of these two things, or to have even discussed with Plaintiff the reason why he did not attend the February 3 immigration court hearing, in order to establish a factual basis for the motion to reopen, was a departure from good and accepted legal practice.

44.    Plaintiff's expert also testified that the "Motion to Reopen to Reconsider" filed by Defendant was not only completely deficient, but that it severely compromised Plaintiff's case because he was only allowed to file one motion to reopen.    She also testified that Defendant's statements to the Disciplinary Committee, that Plaintiff's marriage was fraudulent, would have made it far more difficult for Plaintiff to get his immigration case reopened.    She testified that it was directly contrary to Plaintiff's interests, and contrary to good and accepted legal practice, for Defendant to have made this statement, considering Defendant's testimony that he had no recollection of ever meeting Plaintiff or his spouse.

45.    Defendant did not present an expert, and was the sole defense witness.    He testified that he had no recollection of ever meeting Plaintiff, that he had never met Plaintiff's wife, Jolie.    He testified that all of their immigration forms and immigration court documents had been prepared by Ms. Ivan, and that he subsequently signed them without ever having met either of them.    He further testified that he did this on numerous other immigration cases that Ms. Ivan prepared, and that it was a routine practice for him.

46.    He testified that his legal strategy was to *not* to appear in court after having filed a notice of

12

appearance, so that the Immigration Judge would have been bound to grant an adjournment, whereas that might not have happened had he attended the hearing.   He testified that he did not bring it to the court's attention that Mr. Borges was married to a US citizen and thus eligible for permanent residence because he did not think it was relevant.   He also testified that the *in absentia* order was part of his legal "strategy" to allow Plaintiff to "buy time" during which he could accumulate additional equities in support of his marriage-based petition.

47.   Defendant acknowledged that the "motion to reopen to reconsider" did not offer any explanation for Mr. Borges' nonappearance in court, didn't mention that he had married a U.S. citizen or filed a green card application, and that it did not actually ask for the *in absentia* order to be vacated.   He testified that there was no prejudice in filing such a motion, although only one such motion was authorized, and that he knew at the time it was impossible for it to have been granted.   He testified that he did not care one way or another if it was granted, and that he had not spoken with Plaintiff prior to filing it, in order to find out why he had not attended his court hearing, and did not tell him when it was denied.   He also testified that there was no harm in Plaintiff being deported, even though Plaintiff's expert had testified that Plaintiff would not have been eligible to even apply to return to the US for ten years after his deportation.

48.   Defendant acknowledged having erased the Entra America phone number on certain of Plaintiff's immigration documents that he filed with the Disciplinary Committee and replaced it with his own office phone number, but asserted it was part of his filing system, in order to keep track of which cases had originated at Entra America.

49.    Rather than present an expert witness, Defendant's attorney instead asked the Court to charge the jury with what he believed to be the relevant regulations and caselaw governing applications for permanent residence, even though that (eligibility for permanent residence) was not the basis for Plaintiff's malpractice claim.    At the charge conference, Defendant's attorney again did not raise any objection to the jury being instructed that they could award damages for pain and suffering caused by his detention, despite repeated opportunities to do so, nor did he object to its inclusion as an item of damages on the verdict sheet.

50.    The jury returned a verdict in favor of plaintiff, granting him $235,355.00 for loss of employment and $58,447.00 for legal fees, and $600,000.00 for past pain and suffering and $300,000.00 for future pain and suffering.    Judgment was subsequently entered.

51.    On May 31, 2012, the New York State Court of Appeals decided Dombrowski v Bulson, 19 N.Y.3d 347, 971 N.E.2d 338, 948 N.Y.S.2d 208 (N.Y. 2012), reversing the Fourth Department, and upheld the rule in New York limiting recovery in legal malpractice actions to pecuniary damages.

52.    Defendant appealed the verdict to the Appellate Term of the Supreme Court, which dismissed the appeal on the basis that, *inter alia,* Defendant had failed to object to that portion of the charge that the jury could award damages for pain and suffering.    The Court held that "Defendant did not raise an objection to the jury charge as given… or to the corresponding question on the verdict sheet, and, indeed, defendant raised no objection at trial to the introduction of evidence regarding the mental and emotional disturbance caused by plaintiff's detention…"    Borges v Placeres, 2014 N.Y.Misc. LEXIS 885, 2014 NY Slip Op 24053 (App.Term, Mar. 5, 2014).

14

53.    Defendant then appealed to the Appellate Division, which denied the appeal in December

2014, on much the same grounds, ruling that "Defendant's argument that the damages

awarded for the harm resulting from plaintiff's 14 months in detention constitute

non-pecuniary damages that are not recoverable in a legal malpractice action is unpreserved."

Borges v Placeres, 123 A.D.3d 611, 2 N.Y.S.3d 75 (1st Dep't 2014)    Defendant's motion for

leave to appeal to the Court of Appeals was denied, in June 2015.

54.    Although there is an "interests of justice" exception to the rule that objections to a jury charge

are waived if not timely raised, Defendant's attorney did nor argue for such an exception in his

appeals to the Appellate Term, Appellate Division or his motion for leave to appeal to the

Court of Appeals.

55.    On January 22, 2015, Plaintiff, through counsel, served Defendant with an information

subpoena, in order to allow him discover Defendant's assets and to enforce the judgment.

Defendant failed to respond.

56.    On February 23, 2015, Plaintiff served Defendant with a motion, seeking to have him held in

contempt of court for failure to respond to the Information Subpoena, for a restraining order,

and for counsel fees in the amount of $2,900.    Defendant failed to appear or respond to the

Motion, and it was granted on default, and the Court directed that an order be settled on notice

on March 31, 2015.    Because of the commencement of the bankruptcy action, the Court did

not sign the Notice of Settlement; however, the order for payment of counsel fees was not

affected by this bankruptcy case, and Defendant listed it as a debt payable to Plaintiff's

attorney, the undersigned, in his amended Schedule F filed on July 29, 2015.

57.    On or about August 21, 2015, the Disciplinary Committee found that Defendant's failure to

attend Plaintiff's immigration court hearing, and his submission to the Committee of an

incomplete or inaccurate representation of Plaintiff's file, was conduct that adversely reflected

on his fitness as a lawyer, and issued a formal admonition.

### iii.    Defendant's bankruptcy proceeding.

58.    Defendant filed the instant petition for bankruptcy on March 23, 2015.

59.    According to his bankruptcy petition, Defendant has absolutely no assets of any kind, and has

income from employment of $1,000 per month and from social security of $1,100 per month.

Although Defendant is married and lives with his spouse, the Schedule I "Statement of

Income" does not contain any information about Defendant's wife's income.    The Schedule

does not list any causes of action as an asset of Defendant.

60.    In May 2015, Plaintiff served Defendant with a document demand and notice of deposition,

pursuant to FRBP Rule 2004.    Defendant agreed to this Rule 2004 discovery, and was

deposed on August 25, 2015.

61.    According to the testimony at his deposition, Defendant has been practicing law in New York

for over forty years, was the host of a Saturday morning radio show for about seventeen years,

answering questions about immigration law, and had periodically been a guest on a TV show,

also responding to inquiries about immigration law.    He was consistently invited to join or

found numerous Chambers of Commerce, in the US and in Puerto Rico, belonged to the

Hispanic Small Business Association, and had been invited to join the small business

committee of US Senator Kristen Gillibrand.    Although he has taken a number of trips to the

Dominican Republic and one to Mexico in recent years, he claims they were part of a

"humanitarian mission" to bring supplies to rural areas of the Dominican Republic, in which

16

his airfare and expenses were all paid for by someone else.

62.   Defendant lives with his wife, a retired court translator, in a $619-per-month rent stabilized apartment, yet has no savings, investments, retirement accounts, pension plan, personal property, real property, vehicles, or any assets other than a bank account with approximately $2,000, and that his sister and his wife periodically give him money to live on.   He also has an accountant do his taxes every year, despite this lack of income.

63.   Defendant was represented in the proceedings at the Disciplinary Committee in 2004 by an attorney, Walter Rivera, and from 2012 to 2015 by Jose Luis Torres, yet claims that they each represented him for free, as a personal favor.   He was represented by an attorney, Nestor Rosado, in the civil action, from 2004 through 2012, which he also claims was free, because Mr. Rosado had shared office space with him in the 1980s for two years, when they were law partners.

64.   Mr. Torres (who had represented him for free at the Disciplinary Committee between 2012 and 2015) also represented him in the civil action after Mr. Rosado withdrew, in February 2012, including pre- and post-trial motions and an interlocutory appeal to the Appellate Term in 2012, an appeal from the final judgment also to the Appellate Term in 2013, a motion for leave to appeal to the Appellate Division in 2013, an appeal at the Appellate Division in 2014, and a motion for leave to appeal to the Court of Appeals in 2015.   Defendant claims that Mr. Torres also did all this for free as a personal favor, because they were close friends, as with Mr. Rosado and Mr. Rivera, as well as in exchange for "very good" cases that Defendant referred to him, instead of doing them himself.

65.   At his deposition, Defendant testified that Brian Robinson, who appeared on Mr. Torres'

behalf at the actual trial, did not represent him properly, stating that "I don't think that I was well-represented [in] that case" and that "I was hit for non pecuniary damages, I was told, because we did not raise an objection."   He also testified that had such an objection been raised, the award for non-pecuniary damages would have been vacated on appeal:

> Q.   Is it your position that if you had raised an objection to it, it would have been vacated subsequently on appeal?
>
> A.   Yes.

66.   Nonetheless, he testified that although he had a claim for malpractice against his former attorneys, he did not want to pursue it because he felt it would be unfair to do so:

> Q.   If you had a claim for legal malpractice with regard to that portion of the verdict, it was on non-pecuniary damages?
>
> A.   Yes.
>
> Q.   That's $900,000 of the verdict, correct?
>
> A.   Something like that.
>
> Q.   Is there a reason you have not pursued that claim against him?
>
> A.   I guess that I think –
>
> Q.   He did the best he could under the circumstances?
>
> A.   Yes, he was not knowledgeable, like you are from, and he just parachuted in.
>
> Q.   So you think it would not be fair for you to go after him on that?
>
> A.   Yes.

(Exhibit F)

67.   Defendant did not amend the schedule to his bankruptcy filing to reflect this cause of action as

an asset.

68. Through counsel, Plaintiff subsequently notified the trustee of the existence of this cause of action.

69. Defendant listed two other debts on the schedules to his bankruptcy petition: one to American Express for $6,000 from 2004, and another arising from his guarantee of a lease at his former office address, 2710 Broadway, New York NY, in the amount of $36,000.   However, American Express have no current claim against Defendant, and the statute of limitations has long expired on any claim they might have had against him in the past.

70. Defendant also has no liability in connection with a lease for 2710-2714 Broadway.   In response to the Rule 2004 discovery demand, Defendant provided Plaintiff with a December 2014 letter from a debt collecting lawfirm to Defendant, stating that he is a "guarantor" and that he is indebted to 2710-2714 Broadway LLC in the amount of $36,949.   Defendant also provided what purports to be a Notice of Petition for non-payment by 2710-2714 Broadway LLC against Akimbo Marketing, with a New York City Civil Court Index Number of 74141/2014, but there is no record of such an action pending in that Court.   Appended to those documents is a blank form entitled "Tenant Estoppel Certificate" undated and unsigned, and in which Defendant's name does not appear anywhere.   Thus, there is no bona fide claim against Defendant for either monies owed to American Express or 2710-2714 Broadway LLC.

71. The only claims against Defendant and monies owed by him are those owed to Plaintiff and Plaintiff's attorney arising from the malpractice action.

**CLAIMS FOR RELIEF**

**COUNT I – DISMISSAL OF DEFENDANT'S BANKRUPTCY PETITION PURSUANT TO 11 U.S.C. § 707**

72.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 71 of this

Complaint as if set forth at length herein.

73.    Defendant has filed this bankruptcy petition in order to frustrate payment of the judgment to

Plaintiff, and solely in response to said judgment.

74.    Defendant has not made any attempt to pay Plaintiff during the three years since judgment was

entered, and has not made any significant lifestyle changes in order to pay even part of this

debt.    On the contrary, faced with this judgment, Defendant decided to retire, and to refer any

work to other lawyers, instead of doing it himself.    Defendant has the ability and the

opportunity to generate sufficient income to discharge his debt to Plaintiff, in whole or in part.

75.    Defendant has also made no attempt to pursue the obvious avenue available to him to repay

this judgment: an action for legal malpractice against his former attorneys, despite believing

that he has such a cause of action, for at least $900,000.

76.    Defendant also has not amended the schedule filed in this bankruptcy case to reflect this cause

of action as an asset.

77.    Defendant has also been less than candid regarding his income and assets.    It is not credible

that after forty years practicing law, including seventeen years as a radio host on an

immigration program, and service on numerous Chambers of Commerce and small business

committees, that Defendant has no savings, investments, or assets of any kind.    This is

particularly so as Defendant's overheads are minimal: he has always lived in a $600 rent

20

stabilized apartment with his wife, who is employed as a court interpreter.

78.    It is also not credible that numerous attorneys have represented Defendant for free during the last twelve years, or that unidentified individuals have consistently paid the expenses for Defendant's trips to the Dominican Republic, Mexico and Puerto Rico.

79.    Defendant also has had the opportunity to make more money and repay at least part of his debt to Plaintiff.    Defendant testified at his deposition that he refers any cases he gets to another attorney, Jose Luis Torres, Esq., rather than do the work himself.

80.    Defendant's failure and refusal to discharge his debt to Plaintiff, despite having the opportunity to do so, and his failure to be candid or credible about his income and assets, constitute bad faith, justifying dismissal of the bankruptcy proceeding pursuant to 11 U.S.C. § 707(a).

**COUNT II -- NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER 11 U.S.C. § 523(a)(4)**

81.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 80 of this Complaint as if set forth at length herein.

82.    Pursuant to Bankruptcy Code § 523(a)(4), an individual debtor is not discharged from any debt for fraud while acting in a fiduciary capacity.

83.    The debt owed by Defendant to Plaintiff arose from Defendant's fraud and malfeasance both during Plaintiff's immigration case and subsequently, during the pendency of Plaintiff's motion to reopen.

84.    Defendant had an ongoing fiduciary obligation to Plaintiff, to be honest about the facts of his representation of Plaintiff, and about the facts of Plaintiff's immigration case.

21

85.     In violation of this fiduciary obligation, Defendant intentionally made false and misleading

        statements about Plaintiff to the Disciplinary Committee.    These statements included, but

        were not limited to, that he (Defendant) had done all of the work on Plaintiff's immigration

        case, that Plaintiff had told him he would not attend his immigration court hearing because he

        did not want to miss time from work, and that he had withdrawn from Plaintiff's immigration

        case because he believed Plaintiff's marriage to be fraudulent.

86.     Defendant knew that these responses would be submitted to the Immigration Court and the

        Board of Immigration Appeals in deciding Plaintiff's motion to reopen.    Defendant also

        knew that these statements would make it difficult, if not impossible, for Plaintiff's motion to

        reopen to be granted, and were made with that intention.    Defendant also made these

        statements knowing that they were false, and with reckless disregard for their truth or their

        consequences.

87.     Defendant also lied about the rental of the PO Box listed as Defendant' address on Plaintiff's

        immigration papers, and falsified certain of the documents he submitted to the Disciplinary

        Committee. Defendant knew at the time he assumed the rental of the PO Box that Plaintiff was

        in custody and was fighting to avoid deportation.    Defendant assumed that PO Box rental,

        and falsified the documents he submitted to the Disciplinary Committee, for the sole purpose

        of misleading both the Committee and the Immigration Court and Board of Immigration

        Appeals about Plaintiff's case, and with reckless disregard for the consequences.

88.     In making these statements, Defendant intended to, and did, defraud the Disciplinary

        Committee, the Immigration Court, and Board of Immigration Appeals about Plaintiff's

        immigration case.    These false statements caused Plaintiff's motion to reopen to be denied,

22

which in turn caused the damages to Plaintiff which are reflected in the verdict in the civil action, and violated Defendant's fiduciary duty to Plaintiff.

89.    This fraud and malfeasance, committed in violation of Defendant's fiduciary and other obligations to Plaintiff, renders the Judgment entered against the Debtor non-dischargeable Pursuant to Bankruptcy Code § 523(a)(4).

**COUNT III—OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(6).**

90.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 89 of this Complaint as if set forth at length herein.

91.    While purporting to represent Plaintiff in his immigration case, Defendant failed to attend Plaintiff's Immigration Court hearings, and failed to apprize the Immigration Court that Plaintiff was eligible for permanent residence.    Defendant also allowed a non-attorney to provide legal representation to Plaintiff, including legal advice not to attend his Immigration Court hearing.    This resulted in the *in absentia* removal order.

92.    Once Plaintiff was ordered deported, Defendant failed to take the proper and available steps to vacate it, and instead filed a meaningless and frivolous "Motion to Reopen to Reconsider". Defendant also failed to notify Plaintiff that this motion had been denied, and that he remained subject to the removal order.

93.    Defendant failed to provide Plaintiff with any advice on how to rescind the removal order.

94.    As an experienced immigration lawyer, Defendant knew that his actions and omissions created a serious risk that Plaintiff would be detained and deported, and that this would cause an injury to Plaintiff.

95.    Defendant then made statements regarding Plaintiff to the Disciplinary Committee, knowing

they would be considered by the Immigration Court and Board of Immigration Appeals, which statements were untrue and which were calculated to create injury to Plaintiff.   These statements by Defendant were both malicious and willful.

96.   These statements in turn caused the Immigration Court and Board of Immigration Appeals to deny Plaintiff's motion to reopen, as a result of which he sustained the damages which resulted in the verdict against Defendant in the civil action.

97.   Defendant's debt to Plaintiff, representing this verdict, is the result of a reckless and/or willful and malicious injury, and is thus not dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**COUNT IV -- NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER 11 U.S.C. § 727**

98.   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 97 of this Complaint as if set forth at length herein.

99.   Defendant admits that he has a cause of action against his former attorneys for at least $900,000, with interest since September 2012.

100.   Such a cause of action is indisputably an asset, yet Defendant has not disclosed it in his bankruptcy petition.

101.   Defendant has stated that the only reason he has not attempted to pursue this cause of action is because he would "feel bad" for his former attorney.

102.   Defendant's refusal to disclose this asset in the bankruptcy schedule, or to amend the schedule to list this cause of action as an asset, warrants dismissal of this bankruptcy petition pursuant to 11 U.S.C. § 727(a).

103.   Alternatively, this Court should assign this cause of action to Plaintiff, and stay the discharge

of the bankruptcy petition pending the disposition of such cause of action.

### COUNT V—NON-DISCHARGEABILITY OF DEFENDANT'S DEBT TO PLAINTIFF'S ATTORNEY UNDER 11 U.S.C. § 523(7).

104.  Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 103 of this Complaint as if set forth at length herein.

105.  In March 2015, prior to commencement of this bankruptcy action, Defendant was ordered to pay $2,900 to Plaintiff's attorney for the costs in a motion for contempt, in connection with enforcement of the underlying judgment.

106.  Defendant has listed this as a debt in his amended Schedule F filed on July 29, 2015 (ECF 22).

107.  This debt is not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(7).

**WHEREFORE**, Plaintiff respectfully requests that this Court empanel a jury, hold a hearing, and enter Judgment that Defendant's debt to Plaintiff is non-dischargeable under Bankruptcy Code or, in the alternative, deny the Debtor's discharge under Bankruptcy Code and dismiss his bankruptcy petition, and enter an Order assigning Defendant's cause of action for malpractice against his former attorneys to Plaintiff, along with such other and further relief as this Court may deem just and proper.

Dated:        New York, New York
              October 13, 2015


/s/ Paul O'Dwyer
Paul O'Dwyer, Esq.
Law Office of Paul O'Dwyer, P.C.
Attorneys for Plaintiff Jose Borges
134 West 26 Street, Suite 902
New York NY 10001
Telephone (646) 230-7444
paul.odwyer@paulodwyerlaw.com