ORTIZ & ORTIZ, LLP
32-72 Steinway Street, Suite 402
Astoria, New York 11103
Tel. (718) 522-1117
Fax (718) 596-1302
Norma E. Ortiz
Martha J. de Jesus
email@ortizandortiz.com
*Attorneys for Defendant Alfred Placeres*


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

ALFRED PLACERES,                                    Case No. 15-10691 (SMB)

                    Debtor.                      Chapter 7

-------------------------------------------------------------x

JOSE BORGES,

                    Plaintiff,              Adv. Proc. No. 15-01356-SMB

    -against-

ALFRED PLACERES,

                  Defendant.

-------------------------------------------------------------x

**LOCAL BANKR. RULE 7056.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

      Defendant Alfred Placeres ("Defendant"), hereby submits his statement of material facts as to which there are no genuine issues to be tried, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7056-1, as follows:

I.      **Defendant's Representation of Plaintiff From 1998 to 1999**

   A.      *Appearance Before the Immigration Court in 1998*

   1.      Defendant is an attorney licensed to practice law in the State of New York. Ortiz Decl. Ex. 3 (Defendant Decl.) ¶ 1.

   2.      Jose Borges ("Plaintiff") is a native of Venezuela who was placed in removal proceedings in the Immigration Court in New Jersey in 1997 to answer a charge that he had overstayed the terms of his visa and was removable to Venezuela. Jose Borges v. Alfred Placeres, 15-01356 (Bankr. S.D.N.Y. Oct. 13, 2015) ECF No. 1 (the "Complaint") ¶¶ 1, 10.

   3.      In 1997, Plaintiff appeared three times in Immigration court *pro se*. Declaration of Norma Ortiz (the "Ortiz Decl.") Ex. 2 (Borges Trial Testimony) at 19:1-2, 17-18 - 20:17. He was granted adjournments and directed to hire counsel prior to his next hearing scheduled for January 27, 1998 (the "Fourth Removal Hearing"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 20:6-10.

   4.      In January 1998, the Plaintiff went to the offices of Entra America ("Entra"), a paralegal service, owned and operated by Adela Ivan ("Ivan"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 21:4-6. Ivan claimed to be Defendant's paralegal. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 22:21-22, Complaint ¶ 11.

   5.      Approximately two weeks before the Fourth Removal Hearing, Plaintiff agreed with Ivan that Defendant would represent him in immigration proceedings in the Immigration Court and before the Immigration and Naturalization Service ("INS"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 23:4-6, 24:24 - 25:2.

   6.      Defendant never met with or spoke directly to Plaintiff. Ortiz Decl. Ex. 2 (Borges

Trial Testimony) at 27:12-15, 91:22-24.

7.   Ivan provided the Plaintiff with a Motion to Change Venue from New Jersey to New York ("Venue Motion") to file with the Immigration Court at the Fourth Removal Hearing. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 27:12-15, 91:22-24.

8.   Defendant did not appear at the Fourth Removal Hearing with Plaintiff on January 27, 1998. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 27:10-11. The Plaintiff was informed that the Defendant would not be appearing with him at the Fourth Removal Hearing. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 103:13, 25.

9.   On January 27, 1998, Plaintiff appeared before the immigration court with a copy of Defendant's Notice of Appearance and the Motion to Change Venue. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 28:5-6.

10.  The Immigration Court denied the Venue Motion and directed Plaintiff to appear on February 3, 1998 (the "Fifth Removal Hearing"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 28:11-12.

11.  The court warned Plaintiff that failure to appear at the Fifth Removal Hearing would result in an order for deportation against him. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 28:16-18.

12.  Ivan told the Plaintiff not to appear at the Fifth Removal Hearing because she alleged that an application for a green card would be submitted before that hearing and that Plaintiff should not worry about the hearing. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 31:16-19, 101:24, 102:2-3.

13.  On February 3, 1998, neither the Plaintiff nor Defendant appeared at the

Plaintiff's hearing before the Immigration Court and Plaintiff was ordered deported *in absentia* by the court. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 32:17-18, 33:17-18.

    B.    *Preparation of the Green Card Application*

14.    On January 29, 1998, the Plaintiff married his wife, Julie LaMarca. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 24:22-23. Plaintiff and his wife completed forms to request a green card for the Plaintiff based on his marriage. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 30:7-10.

    C.    *Motion to Reopen*

15.    In early April 1998, Plaintiff received a notification of his *in absentia* deportation order. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 33:16-18.

16.    In response, on April 25, 1998, Defendant filed a motion for reconsideration in the Proceeding to obtain an automatic stay of the deportation order while the motion was pending. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 123:7.

17.    Defendant's strategy was to file a motion to reopen the case in April 1998 because it would grant the Plaintiff an automatic stay of the deportation; if it was denied after the marriage petition had been processed, the Plaintiff could file a joint motion for reconsideration with the INS based on his marriage. Complaint ¶ 46.

18.    While the motion to reopen was pending, the Plaintiff continued to pursue his application to remain in the country based on his marriage to a U.S. citizen. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 35:25 - 36:25.

19.    In May 1998, the Plaintiff received authorization to work in the U.S. while his marriage petition was pending. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 35:25 - 36:2.

20. In June 1998, the Defendant's motion was denied, but Ivan told the Plaintiff that the Motion to Reopen had been granted. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 35:15-18.

21. The Plaintiff discovered that the Motion had been denied when he was unable to travel to Venezuela when his mother was ill. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 41:7-10.

22. Defendant's representation of Plaintiff ended in 1999 when Ivan informed the Plaintiff that the Defendant was no longer working with Entra, and Jamal Jbara would be his new lawyer. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 37:13-17.

## II. Defendant's Actions After His Representation of Plaintiff After 1999 Facts

### A. *Plaintiff's 2003 Motion to Reopen*

23. In early 2003, Plaintiff's new counsel filed a second motion to reopen the *in absentia* order with the Immigration Court that was based upon the Defendant's ineffective assistance of counsel and fraud (the "2003 Motion to Reopen"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 48:1-2. That motion was denied and subsequently re-filed. Ortiz Decl. Ex 13.

24. The Plaintiff filed a ethics complaint against the Defendant with the Disciplinary Committee. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 48:23-24. The Plaintiff submitted Defendant's response to the ethics complaint to the Immigration Court which was deciding his Motion to Reopen. Complaint ¶ 23.

25. The Immigration Court and then the Board of Immigration Appeals ("BIA") denied Plaintiff's motion to reopen because it was untimely and because Plaintiff had already filed previous motions that had been denied. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 50:7.

26. Plaintiff moved to supplement the record at the Court of Appeals with the

documents submitted to the Disciplinary Committee.  Complaint ¶ 24.

27.     Plaintiff appealed that denial to the Third Circuit Court of Appeals.  Complaint ¶ 33.  The Third Circuit Court of Appeals held that "[i]f the BIA finds fraud and finds that, by virtue of equitable tolling, the motion to reopen was timely filed, it is instructed to vacate the in absentia order of removal so that Borges can apply for adjustment of status." Ortiz Decl. Ex. 7, Borges v. Gonzales, 402 F.3d 398, 409 (3d Cir. 2005).

28.     On remand, the in absentia order of removal was vacated, and Plaintiff's application for adjustment of status was granted.  Complaint ¶ 34.

B.     *Disciplinary Committee Complaint*

29.     In connection with the 2003 Motion to Reopen, on January 8, 2003, Plaintiff filed a complaint against Defendant with the Disciplinary Committee of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department (the "DDC").  Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 48:23-24.

30.     The DDC complaint alleged that Plaintiff had never met Defendant and that all of the work on Plaintiff's case had been done by Ivan, that she had forged Defendant's signature on all of Plaintiff's immigration forms and immigration court papers, that the address on all of Plaintiff's immigration papers was a postal box address which was not Defendant's address, that she had instructed Plaintiff not to attend his immigration court hearing, and that Plaintiff had been eligible for relief from removal based on his marriage to a U.S. citizen. Complaint ¶ 22.

31.     The committee closed the complaint because of pending litigation by the Plaintiff against the Defendant.  The DDC reopened the complaint after the conclusion of the Plaintiff's civil court action against the Defendant.  Ortiz Decl. Ex. 8 DDC Letter dated October

7, 2013.

32. On August 21, 2015, the Disciplinary Committee found that Defendant's failure to attend Plaintiff's immigration court hearing, and his submission to the Committee of an incomplete or inaccurate representation of Plaintiff's file, was conduct that adversely reflected on his fitness as a lawyer, and issued a formal admonition. Ortiz Decl. Ex. 9 DDC Admonition dated July 22, 2015.

      *i.    Defendant's Response to Disciplinary Committee Complaint*

33. Defendant responded to the DDC complaint, stating that Plaintiff's allegations were untrue, that he was the one who had done all of the work on Plaintiff's immigration case, that Ivan had not instructed Plaintiff not to attend the February 3, 1998, court hearing, that Plaintiff had not attended his immigration court hearing because he did not want to take time off from work, that the postal box address was his and had been his since the 1980's because of problems with receiving mail at his office address, and that he believed Plaintiff's marriage to be fraudulent. Complaint ¶ 23.

      *ii.    Documents with different information & receipts not from Plaintiff*

34. In the course of the Disciplinary Committee's investigation of Plaintiff's complaint, Defendant provided it with receipts for payments he claimed to have received from Plaintiff, as well as copies of some of Plaintiff's immigration applications and petitions on which the phone number of Ivan had been erased and replaced with his own office phone number. Complaint ¶ 30.

35. Copies of documents submitted to the Immigration Court and submitted to the DDC contained the following alterations:

      a.    Defendant's telephone numbers were changed. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 69: 8-9, Complaint ¶ 48.

      b.    Defendant handwrote Plaintiff's alien number on some of the forms. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 73: 14-19.

      c.    Other than the two changes above, the documents submitted were identical. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 69: 18-19, 73:23-24.

      *iii.*    *Defendant's ownership of P.O. Box*

36. In 2005, Plaintiff received records from the USPS regarding the rental of the PO Box which showed that the PO Box had been rented by Ivan and another person until 2004, when Defendant assumed the lease. Complaint ¶ 31.

    C.    <u>Plaintiff's Civil Action Against Defendant</u>

37. On August 4, 2003, in addition to the pending DDC complaint, Plaintiff commenced a civil action against Defendant, Ivan, and Attorney Jbarra alleging legal malpractice, fraud, and a number of other causes of action. <u>Borges v. Entra America Incorporated</u>, <u>et al</u>., Index No. 2003/114016.

38. On February 18, 2004, Plaintiff was arrested by the Department of Homeland Security and detained for deportation to Venezuela. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 53:17-24. Plaintiff was released on April 1, 2005. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 65:24.

39. A trial on the civil action commenced on February 24, 2012. The state court *sua sponte* dismissed the Plaintiff's causes of action negligence, breach of contract, negligent

supervision, and breach of fiduciary duty as duplicative the legal malpractice cause.  Ortiz Decl. Ex. 1 (State Court Ruling) at 10:14-20, Complaint ¶ 39.

40. Up to February 2012, Defendant was represented in the civil action by Nestor Rosado, Esq., but then Jose Luis Torres, Esq., filed a notice of substitution as Defendant's trial counsel.  Ortiz Decl. Ex. 10.

41. During the trial, Brian Robinson Esq., appeared for Mr. Torres as "of counsel".  Ortiz Decl. Ex. 2 Pg. 1.

42. Mr. Robinson did not enter a notice of appearance or file a notice of substitution as replacement counsel for Mr. Torres, although he was not acting as of counsel to Mr. Torres.  Ortiz Decl. Ex. 5 (Robinson Decl.) ¶ 6.

43. The trial court instructed the jury that they could award Plaintiff damages for the emotional distress he suffered while incarcerated, without a proper objection from Defendant's attorney.  Complaint ¶ 39

44. The jury found that Defendant, acting through Ivan, had instructed Plaintiff not to attend his immigration court hearing, that this advice was a departure from good and accepted legal practice, and that it was the proximate cause of Plaintiff's damages.  Ortiz Decl. Ex. 11 Page 1.

45. The jury awarded Plaintiff damages for lost income, legal fees incurred in trying to resolve his immigration case, and $900,000 for pain and suffering caused by his detention.  Ortiz Decl. Ex. 11 Pages 3-4.

46. Defendant, represented by Jose Luis Torres, Esq., unsuccessfully appealed the judgment.  Complaint ¶ 52.

9

47.     The Appellate Division, First Department affirmed the judgment in December 2014, on the basis that Defendant's argument, that non-pecuniary damages were not recoverable in an action for legal malpractice, was unpreserved, because his attorney had failed to raise an objection to the jury instruction on that issue.  Complaint ¶ 52, <u>Borges v Placeres</u>, 2014 N.Y.Misc. LEXIS 885, 2014 NY Slip Op 24053 (App.Term, Mar. 5, 2014), <u>Borges v Placeres</u>, 123 A.D.3d 611, 2 N.Y.S.3d 75 (1st Dep't 2014).

48.     Defendant's motion for leave to appeal to the Court of Appeals was denied, in June 2015.  Complaint ¶ 53.

49.     At his Rule 2004 deposition, Defendant testified as follows:

> Q. Do you have a claim for malpractice against Mr. Robinson?
>
> A.  No.

(Ortiz Decl. Ex. 12 (Rule 2004 Exam.) at 71:3-5).

> Q. If you had a claim for legal malpractice with regard to that portion of the verdict, it was on non-pecuniary damages?
>
> A. Yes.
>
> Q. That's $900,000 of the verdict, correct?
>
> A. Something like that.
>
> Q. Is there a reason you have not pursued that claim against him?
>
> A. I guess that I think –
>
> Q. He did the best he could under the circumstances?
>
> A. Yes, he was not knowledgeable, like you are from, and he just parachuted in.
>
> Q. So you think it would not be fair for you to go after him on that?

      A. Yes.

(Ortiz Decl. Ex. 12 (Rule 2004 Exam.) at 72:9-24).

50.    Defendant does not believe he has a viable malpractice claim. Ortiz Decl. Ex. 3 (Defendant Decl.). ¶ 8.

51.    Defendant has not paid Plaintiff any portion of the judgment. Complaint ¶ 74.

52.    In January 2015, Plaintiff served Defendant with an information subpoena, seeking production of documents in connection with enforcement of the judgment. Complaint ¶ 55.

53.    Defendant did not respond to the information subpoena. Id.

54.    Plaintiff subsequently filed motion to hold Defendant in contempt and on February 23, 2015, the New York City Civil Court granted Plaintiff's motion to hold Defendant in contempt of court, for his failure to respond to an Information Subpoena, and for counsel fees in the amount of $2,900. Complaint ¶ 56.

**III.**    **Defendant's Bankruptcy Petition**

    A.    *Defendant's Reasons for Filing*

55.    On March 23, 2015, Defendant filed his Chapter 7 case. In re Alfred Placeres, 15-10691 (Bank. S.D.N.Y. Mar. 23, 2015) ECF No. 1.

56.    In the schedules filed with the Chapter 7 case, Defendant claims income of $2,100 per month, and expenses of $2,800 per month, and personal property valued at $4,226, no real property, and liabilities of $1,292,832.00. In his schedule F, Defendant listed three debts: one to 2710-2714 Broadway, LLC in the amount of $36,950 as "Rental Arrears for Office Space: Secured Part on the Lease", $5,676 to American Express from 2004, and $1,250,206.00 to

11

Plaintiff. Id.

57.     Malave did not inform the Defendant of a need to list his possible malpractice claim in the petition. Ortiz Decl. Ex. 6 (Malave Decl) ¶ 3.

58.     The Defendant has not earned more than $56,000 since 1990. Ortiz Decl. Ex. 3 (Defendant Decl.) ¶ 4-5.

59.     The Defendant has not made a change in his lifestyle as a result of the judgment. Ortiz Decl. Ex. 3 (Defendant Decl.) ¶ 7, Complaint ¶ 74.

60.     The Defendant does not refer cases he handles to other attorneys, he only refers cases in areas he does not practice. Ortiz Decl. Ex. 4 (Torres Decl.) ¶ 2.

61.     Mr. Robinson was independent trial counsel to the Defendant and had no professional affiliations with Jose Luis Torres. Ortiz Decl. Ex. 5 (Robinson Decl.) ¶ 4-5, Ortiz Decl. Ex. 4 (Torres Decl.) ¶ 5.

62.     On August 27, 2015, the Defendant's chapter 7 trustee filed a report of no distribution for his bankruptcy case. In re Alfred Placeres, 15-10691 (Bank. S.D.N.Y. Aug. 27, 2015).

63.     On October 13, 2015, Plaintiff commenced this Adversary Proceeding. Jose Borges v. Alfred Placeres, 15-01356 (Bankr. S.D.N.Y. Oct. 13, 2015) ECF No. 1.

64.     On March 24, 2016, Defendant amended his schedules to the cause of action for malpractice against his former attorneys as an asset, stating that it had a value of $1 and provided the following description of this claim: "See attached declaration regarding alleged claims against attorneys Brian Robinson and Jose Luis Torres". In re Alfred Placeres, 15-10691 (Bank. S.D.N.Y. Mar. 24, 2016) ECF No. 35. The attached declaration states that Defendant does not

believe he has viable causes of action against his former attorneys, but amended his schedule because the potential claim was abandoned to Defendant by order of this Court.  Id.

Dated: May 27, 2016
      Queens, New York

                                              */s/Norma E. Ortiz*
                                              Norma E. Ortiz
                                              ORTIZ & ORTIZ, LLP
                                              32-72 Steinway Street, Suite 402
                                              Astoria, New York 11103
                                              Tel. (718) 522-1117
                                              *Attorneys for Defendant*