UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:
ALFRED PLACERES,                                    Case No. 15-10691 (SMB)
                            Debtor.              Chapter 7
-----------------------------------------------------------------x
JOSE BORGES,
                            Plaintiff,           Adv. Proc. No. 15-01356-SMB

    -against-

ALFRED PLACERES,
                            Defendant.
-----------------------------------------------------------------x

## **LOCAL BANKR. RULE 7056.1 PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56, as incorporated by Federal Rule of Bankruptcy Procedure 7056 and Local Rule 7056-1, Plaintiff respectfully submits the following response to Defendant's Rule 7056-1 statement of facts.

**I.    Defendant's Representation of Plaintiff From 1998 to 1999**

    A.    *Appearance Before the Immigration Court in 1998*

    1.    Defendant is an attorney licensed to practice law in the State of New York. Ortiz Decl. Ex. 3 (Defendant Decl.) ¶ 1.

    Plaintiff admits.

    2.    Jose Borges ("Plaintiff") is a native of Venezuela who was placed in removal proceedings in the Immigration Court in New Jersey in 1997 to answer a charge that he had overstayed the terms of his visa and was removable to Venezuela. Jose Borges v. Alfred Placeres, 15-01356 (Bankr. S.D.N.Y. Oct. 13, 2015) ECF No. 1 (the "Complaint") ¶¶ 1, 10.

    Plaintiff admits.

3. In 1997, Plaintiff appeared three times in Immigration court *pro se*. Declaration of Norma Ortiz (the "Ortiz Decl.") Ex. 2 (Borges Trial Testimony) at 19:1-2, 17-18 - 20:17. He was granted adjournments and directed to hire counsel prior to his next hearing scheduled for January 27, 1998 (the "Fourth Removal Hearing"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 20:6-10.

Plaintiff admits.

4. In January 1998, the Plaintiff went to the offices of Entra America ("Entra"), a paralegal service, owned and operated by Adela Ivan ("Ivan"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 21:4-6. Ivan claimed to be Defendant's paralegal. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 22:21-22, Complaint ¶ 11.

Plaintiff admits.

5. Approximately two weeks before the Fourth Removal Hearing, Plaintiff agreed with Ivan that Defendant would represent him in immigration proceedings in the Immigration Court and before the Immigration and Naturalization Service ("INS"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 23:4-6, 24:24 - 25:2.

Plaintiff admits, but clarifies as follows: Ivan told Plaintiff that Defendant would represent him in connection with his immigration case, including his green card application as well as his immigration court case, and Plaintiff paid Ivan directly for this representation. (Plaintiff's Affidavit, ¶ 3, 4)

6. Defendant never met with or spoke directly to Plaintiff. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 27:12-15, 91:22-24.

Plaintiff admits.

7. Ivan provided the Plaintiff with a Motion to Change Venue from New Jersey to

New York ("Venue Motion") to file with the Immigration Court at the Fourth Removal Hearing. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 27:12-15, 91:22-24.

    Plaintiff admits.

    8.    Defendant did not appear at the Fourth Removal Hearing with Plaintiff on January 27, 1998. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 27:10-11. The Plaintiff was informed that the Defendant would not be appearing with him at the Fourth Removal Hearing. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 103:13, 25.

    Plaintiff admits sentence 1, and clarifies sentence 2 as follows: Ivan informed Plaintiff just prior to the January 27, 1998 removal hearing that Defendant was unable to attend the hearing on that date, and that he should go there alone, give the Motion for a Change in Venue to the Immigration Judge ("IJ") and ask for an adjournment. (Plaintiff's Affidavit, ¶ 4)

    9.    On January 27, 1998, Plaintiff appeared before the immigration court with a copy of Defendant's Notice of Appearance and the Motion to Change Venue. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 28:5-6.

    Plaintiff admits.

    10.    The Immigration Court denied the Venue Motion and directed Plaintiff to appear on February 3, 1998 (the "Fifth Removal Hearing"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 28:11-12.

    Plaintiff admits, but clarifies as follows: the Immigration Court denied the Motion to Change Venue and directed Plaintiff to appear on February 3, 1998, with his attorney or else he would be deported. (Plaintiff's Affidavit, ¶ 4)

    11.    The court warned Plaintiff that failure to appear at the Fifth Removal Hearing would result in an order for deportation against him. Ortiz Decl. Ex. 2 (Borges Trial Testimony)

3

at 28:16-18.

       Plaintiff admits, but see response to Paragraph 10, supra.

       12.    Ivan told the Plaintiff not to appear at the Fifth Removal Hearing because she alleged that an application for a green card would be submitted before that hearing and that Plaintiff should not worry about the hearing.    Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 31:16-19, 101:24, 102:2-3.

       Plaintiff denies, and states as follows: Ivan told Plaintiff that she had spoken with Defendant and that his instructions were that Plaintiff should not return to court on February 3, 1998 because he (Defendant) would have filed Plaintiff's green card application before then. Ivan repeated this advice to Plaintiff on several occasions between January 27 and February 3, 1998. (O'Dwyer Decl., Exh. H, Q)

       13.    On February 3, 1998, neither the Plaintiff nor Defendant appeared at the Plaintiff's hearing before the Immigration Court and Plaintiff was ordered deported *in absentia* by the court. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 32:17-18, 33:17-18.

       Plaintiff admits.

       B.    *Preparation of the Green Card Application*

       14.    On January 29, 1998, the Plaintiff married his wife, Julie LaMarca.    Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 24:22-23.    Plaintiff and his wife completed forms to request a green card for the Plaintiff based on his marriage.    Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 30:7-10.

       Plaintiff admits sentence 1, and admits but clarifies sentence 2 as follows: Plaintiff and his wife completed the necessary forms at Ivan's office on January 29, 1998, and paid the required fees to Ivan for Defendant to file them.    (O'Dwyer Decl., Exh. Q)

C.   *Motion to Reopen*

15.   In early April 1998, Plaintiff received a notification of his *in absentia* deportation order.   Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 33:16-18.

Plaintiff denies, and counter-states as follows: in early April, 1998, Plaintiff received a notice from INS, telling him to appear for deportation to Venezuela on an upcoming date. (O'Dwyer Decl., Exh. Q)

16.   In response, on April 25, 1998, Defendant filed a motion for reconsideration in the Proceeding to obtain an automatic stay of the deportation order while the motion was pending. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 123:7.

Plaintiff denies, except acknowledges that a "motion to reopen to reconsider" was filed on April 25, 1998, allegedly by Defendant.   Plaintiff denies that Defendant filed the motion in order to obtain a stay of the deportation order, or that such a motion stayed the deportation order. (O'Dwyer Decl., Exh. H, Q)

17.   Defendant's strategy was to file a motion to reopen the case in April 1998 because it would grant the Plaintiff an automatic stay of the deportation; if it was denied after the marriage petition had been processed, the Plaintiff could file a joint motion for reconsideration with the INS based on his marriage.   Complaint ¶ 46.

Plaintiff denies.

18.   While the motion to reopen was pending, the Plaintiff continued to pursue his application to remain in the country based on his marriage to a U.S. citizen.   Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 35:25 - 36:25.

Plaintiff denies, and counter-states as follows: his application for permanent residence was

filed in March 1998, the "Motion to reopen to reconsider" was filed April 1998 and denied in June 1998. Accordingly, no action was required by Plaintiff on his application for permanent residence during that one-month period. (O'Dwyer Decl., Exh. Q)

19. In May 1998, the Plaintiff received authorization to work in the U.S. while his marriage petition was pending. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 35:25 - 36:2.

Plaintiff admits.

20. In June 1998, the Defendant's motion was denied, but Ivan told the Plaintiff that the Motion to Reopen had been granted. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 35:15-18.

Plaintiff admits, and clarifies that Defendant never told him that it had been denied. (O'Dwyer Decl., Exh. Q)

21. The Plaintiff discovered that the Motion had been denied when he was unable to travel to Venezuela when his mother was ill. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 41:7-10.

Plaintiff admits, and clarifies that he discovered this in April 2000.

22. Defendant's representation of Plaintiff ended in 1999 when Ivan informed the Plaintiff that the Defendant was no longer working with Entra, and Jamal Jbara would be his new lawyer. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 37:13-17.

Plaintiff denies that Defendant's representation of Plaintiff ended in 1999, but admits that in 1999 Ivan informed the Plaintiff that the Defendant was no longer working with Entra, and Jamal Jbara would be his new lawyer.

**II.    Defendant's Actions After His Representation of Plaintiff After 1999 Facts**

    A.    *Plaintiff's 2003 Motion to Reopen*

23. In early 2003, Plaintiff's new counsel filed a second motion to reopen the *in*

*absentia* order with the Immigration Court that was based upon the Defendant's ineffective assistance of counsel and fraud (the "2003 Motion to Reopen"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 48:1-2. That motion was denied and subsequently re-filed. Ortiz Decl. Ex 13.

Plaintiff admits the first sentence and the first part of the second sentence, but denies that it was re-filed.

24. The Plaintiff filed an ethics complaint against the Defendant with the Disciplinary Committee. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 48:23-24. The Plaintiff submitted Defendant's response to the ethics complaint to the Immigration Court which was deciding his Motion to Reopen. Complaint ¶ 23.

Plaintiff admits, and supplements as follows: In his response to the ethics complaint, Defendant stated that he (and not Ivan) had done all of the work on Plaintiff's case, that the PO Box address on Plaintiff's immigration forms was indeed his and not Ivan's, that it was obvious to Plaintiff that he would be deported for not attending his immigration court hearing, denied that Ivan had told Plaintiff not to attend it and stated that Plaintiff had stated to him (Defendant) that he did not attend the court hearing because he didn't want to take any more time off of work, and that he believed Plaintiff's marriage was fraudulent. See Paragraph 30, *infra*. (O'Dwyer Decl., Exh. B, H, Q)

25. The Immigration Court and then the Board of Immigration Appeals ("BIA") denied Plaintiff's motion to reopen because it was untimely and because Plaintiff had already filed previous motions that had been denied. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 50:7.

Plaintiff admits, but clarifies as follows: the BIA denied the motion because it was untimely, because a prior motion had been denied, and because it found that Defendant's

7

statements in his response to the ethics complaint "had the ring of truth". (O'Dwyer Decl., Exh. N)

    26.    Plaintiff moved to supplement the record at the Court of Appeals with the documents submitted to the Disciplinary Committee.   Complaint ¶ 24.

Plaintiff admits in part and clarifies as follows: Plaintiff admits that he moved to supplement the record in his Petition for Review at the Third Circuit Court of Appeals with some documents Defendant had submitted to the Disciplinary Committee, namely, the immigration forms on which Defendant had erased Ivan's phone number and hand written in his own, and records from the US Postal Service showing that the PO Box had been rented by Ivan for over twenty years until July 2004, when Defendant assumed the lease, and when Plaintiff had already spent five months in immigration custody.   Plaintiff spent another eight months in custody. (O'Dwyer Decl., Exh. H, Q)

    27.    Plaintiff appealed that denial to the Third Circuit Court of Appeals.   Complaint ¶ 33.   The Third Circuit Court of Appeals held that "[i]f the BIA finds fraud and finds that, by virtue of equitable tolling, the motion to reopen was timely filed, it is instructed to vacate the in absentia order of removal so that Borges can apply for adjustment of status." Ortiz Decl. Ex. 7, <u>Borges v. Gonzales</u>, 402 F.3d 398, 409 (3d Cir. 2005).

Plaintiff admits, and further states that the Court of Appeals granted Plaintiff's appeal of the denial of the motion to reopen, and remanded the case back to the BIA.

    28.    On remand, the in absentia order of removal was vacated, and Plaintiff's application for adjustment of status was granted.   Complaint ¶ 34.

Plaintiff admits, and further states that the IJ's decision stated that he was "bound" to grant

8

the motion to reopen.

      B.     *Disciplinary Committee Complaint*

      29.     In connection with the 2003 Motion to Reopen, on January 8, 2003, Plaintiff filed a complaint against Defendant with the Disciplinary Committee of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department (the "DDC"). Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 48:23-24.

      Plaintiff admits.

      30.     The DDC complaint alleged that Plaintiff had never met Defendant and that all of the work on Plaintiff's case had been done by Ivan, that she had forged Defendant's signature on all of Plaintiff's immigration forms and immigration court papers, that the address on all of Plaintiff's immigration papers was a postal box address which was not Defendant's address, that she had instructed Plaintiff not to attend his immigration court hearing, and that Plaintiff had been eligible for relief from removal based on his marriage to a U.S. citizen. Complaint ¶ 22.

      Plaintiff admits, but clarifies that this complaint alleged that Ivan had instructed Plaintiff not to attend his immigration court hearing, stating that she was relaying advice to him from Defendant. (O'Dwyer Decl., Exh. H, Q)

      31.     The committee closed the complaint because of pending litigation by the Plaintiff against the Defendant. The DDC reopened the complaint after the conclusion of the Plaintiff's civil court action against the Defendant. Ortiz Decl. Ex. 8 DDC Letter dated October 7, 2013.

      Plaintiff admits.

      32.     On August 21, 2015, the Disciplinary Committee found that Defendant's failure to

9

attend Plaintiff's immigration court hearing, and his submission to the Committee of an incomplete or inaccurate representation of Plaintiff's file, was conduct that adversely reflected on his fitness as a lawyer, and issued a formal admonition. Ortiz Decl. Ex. 9 DDC Admonition dated July 22, 2015.

Plaintiff admits, but clarifies that the Disciplinary Committee made this finding on July 22, 2015. (Exhibit 9 to Defendant's Motion for Summary Judgment). Plaintiff counter-states that at the 341 Creditor's Committee meeting on August 25, 2015, Defendant repeatedly testified under oath that the Disciplinary Committee had found no wrongdoing by him. (O'Dwyer Decl., Exh. J)

               i.       *Defendant's Response to Disciplinary Committee Complaint*

33. Defendant responded to the DDC complaint, stating that Plaintiff's allegations were untrue, that he was the one who had done all of the work on Plaintiff's immigration case, that Ivan had not instructed Plaintiff not to attend the February 3, 1998, court hearing, that Plaintiff had not attended his immigration court hearing because he did not want to take time off from work, that the postal box address was his and had been his since the 1980's because of problems with receiving mail at his office address, and that he believed Plaintiff's marriage to be fraudulent. Complaint ¶ 23.

Plaintiff admits.

               ii.      *Documents with different information & receipts not from Plaintiff*

34. In the course of the Disciplinary Committee's investigation of Plaintiff's complaint, Defendant provided it with receipts for payments he claimed to have received from Plaintiff, as well as copies of some of Plaintiff's immigration applications and petitions on which the phone number of Ivan had been erased and replaced with his own office phone number.

10

Complaint ¶ 30.

    Plaintiff admits

35.    Copies of documents submitted to the Immigration Court and submitted to the DDC contained the following alterations:

    a.    Defendant's telephone numbers were changed. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 69: 8-9, Complaint ¶ 48.

    b.    Defendant handwrote Plaintiff's alien number on some of the forms. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 73: 14-19.

    c.    Other than the two changes above, the documents submitted were identical. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 69: 18-19, 73:23-24.

Plaintiff denies. As to sub-paragraph 1, Plaintiff counter-states that it was the phone number for Ivan/Entra America which had been changed, and replaced with Defendant's office phone number. As to sub-paragraph 2, Plaintiff counter-states that Plaintiff's type-written alien number had been erased and Defendant had hand-written it in instead. As to sub-paragraph 3, Plaintiff denies in so far as he is not aware of other changes, but cannot attest that there are none.

    iii.    *Defendant's ownership of P.O. Box*

36.    In 2005, Plaintiff received records from the USPS regarding the rental of the PO Box which showed that the PO Box had been rented by Ivan and another person until 2004, when Defendant assumed the lease. Complaint ¶ 31.

    Plaintiff admits.

C.     Plaintiff's Civil Action Against Defendant

37.    On August 4, 2003, in addition to the pending DDC complaint, Plaintiff commenced a civil action against Defendant, Ivan, and Attorney Jbarra alleging legal malpractice, fraud, and a number of other causes of action. Borges v. Entra America Incorporated, et al., Index No. 2003/114016.

Plaintiff admits.

38.    On February 18, 2004, Plaintiff was arrested by the Department of Homeland Security and detained for deportation to Venezuela. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 53:17-24. Plaintiff was released on April 1, 2005. Ortiz Decl. Ex. 2 (Borges Trial Testimony) at 65:24.

Plaintiff admits.

39.    A trial on the civil action commenced on February 24, 2012. The state court *sua sponte* dismissed the Plaintiff's causes of action negligence, breach of contract, negligent supervision, and breach of fiduciary duty as duplicative the legal malpractice cause. Ortiz Decl. Ex. 1 (State Court Ruling) at 10:14-20, Complaint ¶ 39.

Plaintiff admits.

40.    Up to February 2012, Defendant was represented in the civil action by Nestor Rosado, Esq., but then Jose Luis Torres, Esq., filed a notice of substitution as Defendant's trial counsel. Ortiz Decl. Ex. 10.

Plaintiff admits.

41.    During the trial, Brian Robinson Esq., appeared for Mr. Torres as "of counsel". Ortiz Decl. Ex. 2 Pg. 1.

12

Plaintiff admits.

42. Mr. Robinson did not enter a notice of appearance or file a notice of substitution as replacement counsel for Mr. Torres, although he was not acting as of counsel to Mr. Torres. Ortiz Decl. Ex. 5 (Robinson Decl.) ¶ 6.

Plaintiff admits the first sentence but denies the second sentence, and counter-states that Mr. Robinson repeatedly stated that he was appearing as of counsel to Mr. Torres. (O'Dwyer Decl., Exh. K; Plaintiff's Motion to Compel Abandonment of Property, Exhibit D)

43. The trial court instructed the jury that they could award Plaintiff damages for the emotional distress he suffered while incarcerated, without a proper objection from Defendant's attorney.   Complaint ¶ 39

Plaintiff admits, but clarifies that the trial court made this instruction without any objection from Defendant's attorney.

44. The jury found that Defendant, acting through Ivan, had instructed Plaintiff not to attend his immigration court hearing, that this advice was a departure from good and accepted legal practice, and that it was the proximate cause of Plaintiff's damages. Ortiz Decl. Ex. 11 Page 1.

Plaintiff admits, and clarifies as follows: the jury also found that Defendant's failure to attend Plaintiff's February 3, 1998 court hearing, and his failure to allege adequate grounds in the "motion to reopen to reconsider" were also a departure from good and accepted legal practice, and were the proximate cause of Plaintiff's damages.   Ortiz Decl. Ex. 11 Page 1.

13

45.   The jury awarded Plaintiff damages for lost income, legal fees incurred in trying to resolve his immigration case, and $900,000 for pain and suffering caused by his detention. Ortiz Decl. Ex. 11 Pages 3-4.

Plaintiff admits.

46.   Defendant, represented by Jose Luis Torres, Esq., unsuccessfully appealed the judgment.   Complaint ¶ 52.

Plaintiff admits.

47.   The Appellate Division, First Department affirmed the judgment in December 2014, on the basis that Defendant's argument, that non-pecuniary damages were not recoverable in an action for legal malpractice, was unpreserved, because his attorney had failed to raise an objection to the jury instruction on that issue.   Complaint ¶ 52, Borges v Placeres, 2014 N.Y.Misc. LEXIS 885, 2014 NY Slip Op 24053 (App.Term, Mar. 5, 2014), Borges v Placeres, 123 A.D.3d 611, 2 N.Y.S.3d 75 (1st Dep't 2014).

Plaintiff admits.

48.   Defendant's motion for leave to appeal to the Court of Appeals was denied, in June 2015. Complaint ¶ 53.

Plaintiff admits.

49.   At his Rule 2004 deposition, Defendant testified as follows:

    Q. Do you have a claim for malpractice against Mr. Robinson?

    A.  No.

(Ortiz Decl. Ex. 12 (Rule 2004 Exam.) at 71:3-5).

> Q. If you had a claim for legal malpractice with regard to that portion of the verdict, it was on non-pecuniary damages?
>
> A. Yes.
>
> Q. That's $900,000 of the verdict, correct?
>
> A. Something like that.
>
> Q. Is there a reason you have not pursued that claim against him?
>
> A. I guess that I think –
>
> Q. He did the best he could under the circumstances?
>
> A. Yes, he was not knowledgeable, like you are from, and he just parachuted in.
>
> Q. So you think it would not be fair for you to go after him on that?
> A. Yes.

(Ortiz Decl. Ex. 12 (Rule 2004 Exam.) at 72:9-24).

Plaintiff admits.

50. Defendant does not believe he has a viable malpractice claim. Ortiz Decl. Ex. 3 (Defendant Decl.). ¶ 8.

This statement of what Defendant claims to believe is not a proper statement of facts, and Plaintiff is unable to properly respond. To the extent a response is required, Plaintiff denies this statement, and counter-states that Defendant has previously testified that he does have a claim for malpractice for failure to object to the jury instruction on this issue. See Statement 49, above.

51. Defendant has not paid Plaintiff any portion of the judgment. Complaint ¶ 74.

Plaintiff admits.

52. In January 2015, Plaintiff served Defendant with an information subpoena, seeking

production of documents in connection with enforcement of the judgment.   Complaint ¶ 55.

Plaintiff admits.

53.    Defendant did not respond to the information subpoena.   Id.

Plaintiff admits.

54.    Plaintiff subsequently filed motion to hold Defendant in contempt and on February 23, 2015, the New York City Civil Court granted Plaintiff's motion to hold Defendant in contempt of court, for his failure to respond to an Information Subpoena, and for counsel fees in the amount of $2,900.   Complaint ¶ 56.

Plaintiff admits, and counter-states that Defendant defaulted in responding to this contempt motion.

### III.    Defendant's Bankruptcy Petition

*A.    Defendant's Reasons for Filing*

55.    On March 23, 2015, Defendant filed his Chapter 7 case.   In re Alfred Placeres, 15-10691 (Bank. S.D.N.Y. Mar. 23, 2015) ECF No. 1.

Plaintiff admits.

56.    In the schedules filed with the Chapter 7 case, Defendant claims income of $2,100 per month, and expenses of $2,800 per month, and personal property valued at $4,226, no real property, and liabilities of $1,292,832.00.   In his schedule F, Defendant listed three debts: one to 2710-2714 Broadway, LLC in the amount of $36,950 as "Rental Arrears for Office Space: Secured Part on the Lease", $5,676 to American Express from 2004, and $1,250,206.00 to Plaintiff.   Id.

Plaintiff admits, and counter-states that Defendant has been unable to produce a copy of

16

this lease which he claims to have personally guaranteed.

57. Malave did not inform the Defendant of a need to list his possible malpractice claim in the petition.   Ortiz Decl. Ex. 6 (Malave Decl) ¶ 3.

Plaintiff lacks knowledge or information sufficient to respond to this statement.

58. The Defendant has not earned more than $56,000 since 1990.   Ortiz Decl. Ex. 3 (Defendant Decl.) ¶ 4-5.

Plaintiff lacks knowledge or information sufficient to respond to this statement.

59. The Defendant has not made a change in his lifestyle as a result of the judgment. Ortiz Decl. Ex. 3 (Defendant Decl.) ¶ 7, Complaint ¶ 74.

Plaintiff lacks knowledge or information sufficient to respond to this statement.

60. The Defendant does not refer cases he handles to other attorneys, he only refers cases in areas he does not practice.   Ortiz Decl. Ex. 4 (Torres Decl.) ¶ 2.

Plaintiff lacks knowledge or information sufficient to respond to this statement.

61. Mr. Robinson was independent trial counsel to the Defendant and had no professional affiliations with Jose Luis Torres.   Ortiz Decl. Ex. 5 (Robinson Decl.) ¶ 4-5, Ortiz Decl. Ex. 4 (Torres Decl.) ¶ 5.

Plaintiff denies this statement, and counter-states that Mr. Robinson repeatedly stated at the trial that he was "of counsel" to, and/or appearing on behalf of, Jose Luis Torres, and Defendant repeatedly testified at his Rule 2004 deposition that Robinson appeared on behalf of

17

Torres at the trial. (O'Dwyer Decl., Exh. J, K)

      62.    On August 27, 2015, the Defendant's chapter 7 trustee filed a report of no distribution for his bankruptcy case. In re Alfred Placeres, 15-10691 (Bank. S.D.N.Y. Aug. 27, 2015).

      Plaintiff admits.

      63.    On October 13, 2015, Plaintiff commenced this Adversary Proceeding. Jose Borges v. Alfred Placeres, 15-01356 (Bankr. S.D.N.Y. Oct. 13, 2015) ECF No. 1.

      Plaintiff admits.

      64.    On March 24, 2016, Defendant amended his schedules to the cause of action for malpractice against his former attorneys as an asset, stating that it had a value of $1 and provided the following description of this claim: "See attached declaration regarding alleged claims against attorneys Brian Robinson and Jose Luis Torres". In re Alfred Placeres, 15-10691 (Bank. S.D.N.Y. Mar. 24, 2016) ECF No. 35. The attached declaration states that Defendant does not believe he has viable causes of action against his former attorneys, but amended his schedule because the potential claim was abandoned to Defendant by order of this Court. Id.

      Plaintiff admits that Defendant amended his schedules with the above statements, but denies that said statements are true.

Dated:      New York, New York
                June 17, 2016

/S/ Paul O'Dwyer
Paul O'Dwyer, Esq.
Law Office of Paul O'Dwyer, P.C.
Attorney for Plaintiffs
134 West 26th Street, Suite 902
New York, NY 10001
(646) 230-7444