UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re:                                                                Chapter 7

ALFRED PLACERES,
                      Debtor.                          Case No. 15-10691-SMB

_____

JOSE BORGES,
                      Plaintiff,                       Adversary Proceeding
                                       No.

   -against-


ALFRED PLACERES,
                      Defendant.

_____


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF HIS MOTION FOR
PARTIAL SUMMARY JUDGMENT ON COUNT III OF THE COMPLAINT**


Paul O'Dwyer, Esq.
Law Office of Paul O'Dwyer, P.C.
Attorney for Plaintiff Jose Borges
134 West 26 Street, Suite 902
New York NY 10001
Telephone (646) 230-7444
paul.odwyer@paulodwyerlaw.com

1

**INTRODUCTION** ………………………………………………………………… 4

**STATEMENT OF FACTS** ……………………………………………………… 4

   **1.**  **Plaintiff's Immigration Case** ……………………………………………… 4

   **2.**  **The Civil Action** ……………………………………………………………… 9

   **3.**  **Defendant's bankruptcy proceeding.** …………………………………………… 13

**ARGUMENT** …………………………………………………………………… 20

   **1.**  **The Motion to Dismiss Counts I and IV** ……………………………………… 20

      *a.*  *Defendants's failure to make full and candid disclosure.* ……………………… 21

      *b.*  *Defendant's misrepresentations and omissions about his cause of action against his former attorneys.* ………………………………………………………………… 24

      *c.*  *The cause of action under 11 U.S.C. § 727(a).* ………………………………… 29

   **2.**  **Defendant's motion to dismiss the cause of action for fraud in a fiduciary capacity and for willful and malicious acts.** ……………………………………………… 31

      *a.*  *The Motion to Dismiss Count II – Fraud While Acting in a Fiduciary Capacity.* ………… 32

      *b.*  *The Motion to Dismiss Count III - Willful and Malicious Injury.* ……………………… 33

   **3.**  **Plaintiff has no objection to Count V of the Complaint being dismissed.** …………… 39

**CONCLUSION** ………………………………………………………………… 39

**Cases**

Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes),

183 F.3d 162 (2nd Cir.1999)…………………………………………...…………………32

Borges v. Placeres, 2 N.Y.S.3d 75 (1st Dept. 2014) .........…………………………….……………35

In Re Asset Resolution Corp, 2016 Bankr. LEXIS 2002 (D.Ct. Kansas 2016…........….....………..29

In Re Blumenburg, 263 B.R. 707 (Bankr. EDNY 2001) …………………………………………29

In Re Gans, 75 B.R. 474 (S.D.N.Y. 1987) ………………………………………………………..32

In Re Gelman, 47 B.R. 735 (Bankr. S.D. Fla. 1985) …………………………………….…........32

In Re Khafaga, 419 B.R. 539, 548 549 (Bankr. E.D.N.Y. 2009) …………….….........…………36

In re Lombardo, 370 B.R. 506, 512 (Bankr. E.D.N.Y. 2007) …………….…....….………21, 24

In re Maletta, 159 B.R. 108, 112 (Bankr. D. Conn. 1993) …………….…......….....………24, 25, 28

In Re Salim, 2015 Bankr. LEXIS 815 (E.D.N.Y. 2015) …………………………….…....………33, 37

In re Spitko, 357 B.R. 272, 313 (Bankr. E. D. Pa. 2006) ……………………….....….......………24

In Re Stelluti, 94 F.3d 84, 87, 88 (2nd Cir. 1996) ……………………………….........……36, 38

In Re Tylee, 512 B.R. 409, 417 – 418, (Bankr. E.D.N.Y. 2014) ……………………........……24

Marvel Characters v. Simon, 310 F.3d 280, 286 (2nd Cir. 2003) ……………………...............…23

Rocco v. Goldberg (In re Goldberg), 487 B.R. 112, 121

(Bankr. E.D.N.Y. 2013) ……………………………………………………………………35

Wolkstein v Morgenstern, 713 N.Y.S.2d 171 (1st Dept. 2000). ……………………......…......…11

## INTRODUCTION

This is Plaintiff's Memorandum of Law in opposition to Defendant's Motion for Summary Judgment, and in support of his cross-motion for summary judgment on Count III of the Complaint.

While one of the central purposes of the Bankruptcy Code and the privilege of discharge is to allow the "honest but unfortunate debtor" to begin a new life free from debt, <u>D.A.N. Joint Venture v. Cacioli (In re Cacioli)</u>, 463 F.3d 229, 234 (2d Cir. 2006), Defendant is neither honest nor unfortunate. He repeatedly lied about Plaintiff, and about his involvement in Plaintiff's immigration case, in 2003 and 2004, and has admitted as much.    Those lies gave rise to the injuries Plaintiff suffered, which were the basis for the judgment he recovered, and which Defendant now seeks to discharge. Defendant has also lied under oath and misstated the value of his assets and income in this case, and in particular the cause of action against his former attorneys, in order to shield those former attorneys from liability.    The nature and extent of those lies and misrepresentations, and his willful and malicious acts, preclude granting his motion for summary judgment.

## STATEMENT OF FACTS

### 1. Plaintiff's Immigration Case

The essential facts underlying Plaintiff's history with Defendant are well known.    In short, in January 1998 Plaintiff hired Adela Ivan, a "notario" who claimed to work as a paralegal for Defendant, a well-known immigration lawyer, to represent him in Immigration Court and an application for permanent resident based on the pending marriage.    Plaintiff never met Defendant, but paid all fees directly to Ivan.    Just prior to his next court date, on January 27, 1998, Ivan told Plaintiff that Defendant couldn't attend, and gave him a copy of a Motion to Change Venue and a

4

Notice of Appearance, both signed by Defendant, to take to the Immigration Court.    Plaintiff went

there alone, the Immigration Judge (IJ) refused to change venue, and instructed Plaintiff to return to

Court with his attorney the following week, on February 3, 1998 or he would be deported.

Plaintiff immediately contacted Ivan, who constantly told him that Defendant was unavailable,

but that he had instructed her to tell Plaintiff that he did not have to return to Court on February 3

because his green card application would be filed before then.    Plaintiff married two days later, and

he and his wife immediately went to the Entra America office to sign all the paperwork for his green

card application and pay the legal and filing fees.    Ivan reiterated that Defendant had said Plaintiff

didn't have to return to Immigration Court as his green card application would be filed immediately.

All of the immigration petitions and immigration court documents that were filed on

Plaintiff's behalf named Defendant as Plaintiff's attorney and contained what purported to be

Defendant's signature, a P.O. Box (P.O. Box 7806, FDR Station, New York, New York) as

Defendant's address, and the phone number for Ivan and Entra America ((212) 463-9018), which

Plaintiff assumed was also the phone number for Defendant.

Plaintiff then got receipts for his green card application, but in April 1998, he received a letter

from INS telling him to appear for deportation to Venezuela, whereupon he immediately went to the

Entra America office, and was assured that the matter would be easily rectified by Defendant.

Plaintiff then paid additional fees for Defendant to file a motion to reopen.

A "motion to reopen to reconsider" was subsequently filed, ostensibly by Defendant.

(Complaint, ECF 21, Exhibit 2)    However, this "motion" did not provide the required explanation

for Plaintiff's failure to appear at the February 3rd court hearing, did not point to any basis on which

Plaintiff would be eligible for relief from deportation, such as the pending green card application, and

5

did not in fact even ask for the *in absentia* order to be vacated.    Instead, it stated, in garbled and

incomprehensible language, that the denial of the motion to change venue had been an abuse of

discretion.    It was denied in June 1998, but Ivan informed Plaintiff that it had been granted.    (See

generally,.

Plaintiff assumed the motion had been granted, as he received further notification that his

green card application was being processed, and in February 2000, he attended an interview

(represented by a different attorney, Jamal Jbara, also from the Entra office) in connection with his

green card application.    After an interview, the immigration officer told Plaintiff and his wife that

the application had been approved, stamped an approval notice in his passport, and told him he would

get his green card in the mail.

In April 2000, Plaintiff was told for the first time that the order of deportation had never been

vacated, and that another motion to reopen would be filed, but no such motion was ever filed.    He

returned to the immigration officer who had previously approved his application, told him what had

happened, and the grant of permanent residence was vacated without prejudice (to the outcome of the

immigration court motion that Plaintiff believed was pending).

In July 2002, Plaintiff changed lawyers and discovered for the first time that the order of

removal remained outstanding, and that Defendant had never actually worked out of the Entra

America office, but that instead his office was in upper Manhattan, at 2710 Broadway, that the

motions (to change venue and to reopen the removal order) were factually incorrect, had no legal

basis, and were completely meaningless, and that the marriage-based forms contained misleading

information about his immigration status, and had been filed in the incorrect venue.    See Generally,

Borges v. Gonzales, 402 F.3d 398 (3rd Cir 2005)

6

In January 2003, through his new attorney, Plaintiff filed a second motion to reopen, alleging fraud and ineffective assistance of counsel, in connection with which he filed a complaint against Defendant with the Disciplinary Committee, alleging the facts as essentially set forth above, and that Defendant had not actually performed any of the work on his case, that the address on these immigration forms (P.O. Box 7806, FDR Station, New York, New York) was not Defendant's, and that he had never met Defendant or been to his office.    (O'Dwyer Decl., Exhibit A)

Defendant responded to this complaint, dismissing Plaintiff's allegations as "frivolous and without merit" and stated:

(a)    that he had done all of the work on Plaintiff's case;

(b)    that the PO Box was indeed his and had been for twenty years;

(c)    that Plaintiff had told him prior to the February 3 Immigration Court hearing that he wasn't going to attend it because he didn't want to take any time off from work;

(d)    that he had stopped representing Plaintiff because he believed his marriage was fraudulent; and

(e)    that Defendant shouldn't be held responsible for the *in absentia* order, because it should have been obvious to Plaintiff that he would be deported for not attending the immigration court hearing.    ((O'Dwyer Decl., Exhibit B)

Defendant subsequently acknowledged that he had never even met Plaintiff, and that the PO Box had been Ivan's and not his at the time in qustion. (Defendant's Statement of Undisputed Material Facts ("SUMF"), ¶ 6; (O'Dwyer Decl., Exhibit G, 363 – 367, 559 - 562))

In addition to his written response, Defendant appended certain documents, including fake receipts for payment of legal fees to him, which Plaintiff had never made (he paid all the fees to Ivan)

7

(O'Dwyer Decl., Exhibit C) and some of Plaintiff's immigration forms (which he had presumably

retrieved from Ivan) on which Ivan's number had been erased and replaced with Defendant's own

office number, to convey the impression that he had done all the work on Plaintiff's case. (Complaint

on Adversary Proceeding, ECF 1, Exhibits C, D)    As required by law, Defendant's written response

was submitted by Plaintiff to the Immigration Court as part of the Motion to Reopen. However, the

supporting documents were not given to Plaintiff at that time, and he did not become aware of their

existence until about two years later.

Plaintiff's motion to reopen was denied by the Immigration Court, and in May 2003 he

appealed this denial to the Board of Immigration Appeals (BIA).    Shortly after that he lost his job,

unable to renew his work permit because of the removal order.    (O'Dwyer Decl., Exhibit P, ¶ 17)

In February 2004, Plaintiff was detained by immigration officials for deportation; he

immediately had a severe anxiety attack and had to be taken to a secure psychiatric facility for almost

three months.    While there he attempted suicide two times, was put on suicide watch, and when he

was discharged back to the detention center, he continued to see a psychiatrist, took sleeping pills and

antidepressants for the remainder of the time he was in immigration custody.    Plaintiff remained in

immigration custody for another 322 days.

In March 2004, while Plaintiff was detained, the BIA denied his appeal (of the denial of the

motion to reopen), for three reasons: because it was untimely, because it was numerically barred, and

because of the statements that Defendant had made in response to his complaint.    Plaintiff filed an

appeal of this denial with the Third Circuit Court of Appeals by way of Petition for Review, which

granted him an immediate stay of deportation.    (O'Dwyer Decl., Exhibit P, ¶ 19 - 20)

Later that year, Plaintiff obtained copies of the documents Defendant had submitted to the

8

Disciplinary Committee, including the ones which had been altered, and also discovered that the PO

Box had been rented by Ivan until July 2004, when Defendant took over its rental, directly contrary to

Defendant's statements to the Disciplinary Committee that it had been his for over twenty years.

On April 5, 2005, the Third Circuit Court of Appeals granted the Petition for Review, finding

that the 180-day time within which to file a motion to reopen could be equitably tolled where the

delay was due to fraud, and remanded the case back to the BIA, noting that it had "granted Borges's

motion to supplement the record with newly discovered evidence supporting his allegations of fraud.

We instruct the BIA to consider this evidence in making its findings of fact on the issue of fraud.    If

the BIA finds fraud and finds that, by virtue of equitable tolling, the motion to reopen was timely

filed, it is instructed to vacate the *in absentia* order of removal so that Borges can apply for

adjustment of status."    Borges v. Gonzales, 402 F.3d 398, 409 (3d Cir. 2005).    Plaintiff was

immediately released from immigration custody.    The BIA then reopened the case and remanded it

to the Immigration Judge, who vacated the removal order on January 26, 2006, stating that he was

"bound" to grant the motion.    Plaintiff subsequently adjusted status and then became a citizen.

On July 15, 2015, the Disciplinary Committee found that Defendant's failure to attend

Plaintiff's immigration court hearing, and his submission to the Committee of an incomplete or

inaccurate representation of Plaintiff's file, was conduct that adversely reflected on his fitness as a

lawyer, and issued a formal admonition.    (Ortiz Decl., ECF 12, Exhibit 9; Defendant's SUMF ¶ 32)

### 2.  The Civil Action

In August 2003, Plaintiff commenced a civil action ("the civil action") against Defendant,

Adela Ivan, Entra America, and Jamal Jbara, in New York State Supreme Court, based on the above

facts, and asserting causes of actions for negligence, legal malpractice, breach of contract, negligent

supervision, intentional and negligent infliction of emotional distress, fraud, breach of fiduciary duty, and treble and punitive damages.

The civil action was dismissed as to Ms. Ivan in 2005, and settled by Mr. Jbara in 2010.   On January 31, 2012, Defendant filed his first motion, for leave to amend his (January 2004) answer to add a statute of limitations defense, and for summary judgment.   That motion was denied for two reasons: because the attorney making the motion, Jose Luis Torres, had not been properly substituted for counsel of record, and because it was untimely.   (O'Dwyer Decl., Exhibit M)

After denial of that motion and prior to commencement of jury selection, Mr. Torres executed and filed a corrected substitution of counsel which stated that he was now Defendant's counsel of record.   (Ortiz Decl., ECF 12, Exhibit 12)   At jury selection, and during the trial, attorney Brian Robinson appeared on behalf of Mr. Torres, repeatedly noting his appearance as "Law Office of Jose Luis Torres, by Brian Robinson".   (O'Dwyer Decl, Exh. Q).   Mr. Robinson did not file any substitution of counsel replacing Mr. Torres as counsel of record, and at the end of the trial, Mr. Torres filed a post-trial motion to set aside the verdict.   Mr. Torres did not file any substitution of counsel substituting himself for Mr. Robinson at that time either, as would have been required if Mr. Robinson had been counsel of record.

On February 24, 2012, the trial court *sua sponte* dismissed the causes of action for negligence, breach of contract, negligent supervision, breach of fiduciary duty and infliction of emotional distress as redundant/duplicative of the legal malpractice claim. (O'Dwyer Decl, Exh. K)   The Court ruled that Plaintiff could recover damages for the emotional distress caused by his confinement on the malpractice claim, without objection by Defendant's counsel, and for that reason held that the emotional distress claim was redundant/duplicative of the malpractice claim.   The Court reiterated

this decision on February 27, again without any objection by Defendant's attorney, all of Plaintiff's

psychiatric records were admitted into evidence, without objection from Defendant's attorney.

However, the applicable law at that time in the First Department, where the civil action was pending,

was that "A cause of action for legal malpractice does not afford recovery for any item of damages

other than pecuniary loss so there can be no recovery for emotional or psychological injury.",

Wolkstein v Morgenstern, 275 A.D.2d 635, 637, 713 N.Y.S.2d 171 (1st Dept. 2000).

At trial, Plaintiff testified to the above facts regarding his immigration case and his

representation by Ivan, testifying in detail about her statements to him, that Defendant had repeatedly

told her to tell him (Plaintiff) not to attend his immigration court hearing.    (O'Dwyer Decl, Exh. H).

Plaintiff also presented an expert witness, who testified, in sum, that if Defendant had attended

Plaintiff's immigration court hearing on February 3, 1998 and sought an adjournment on account of

the pending marriage, the Immigration Judge would have been bound to grant it.    She also testified

that if Defendant's "motion to reopen to reconsider" had alleged that Plaintiff had received incorrect

legal advice, to the effect that he did not need to attend his immigration court hearing, the

Immigration Judge would likewise have been bound to grant it.    Plaintiff's expert also testified that

the "Motion to Reopen to Reconsider" filed by Defendant severely compromised Plaintiff's case

because he was only allowed to file one motion to reopen, and that Defendant's statements to the

Disciplinary Committee, that Plaintiff's marriage was fraudulent, would have made it far more

difficult for Plaintiff to get his immigration case reopened.    She testified that it was directly contrary

to Plaintiff's interests, for Defendant to have made this statement, considering Defendant's testimony

that he had no recollection of ever meeting Plaintiff or his spouse.

Defendant did not present an expert, and was the sole defense witness.    He testified that he

had worked from his office at 2710 Broadway for over thirty years, and that he had no recollection of ever meeting Plaintiff or his wife, Jolie; that all of their immigration forms and immigration court documents had been prepared by Ms. Ivan, and that he subsequently signed them without ever having met either of them, and that he routinely did this on numerous other immigration cases that Ms. Ivan prepared.   He testified that his legal strategy was to *not* to appear in court after having filed a notice of appearance, so that the Immigration Judge would have been bound to grant an adjournment, whereas that might not have happened had he attended the hearing; he then testified that the *in absentia* order was actually part of his "strategy" to allow Plaintiff to "buy time" during which he could accumulate additional equities in support of his marriage-based petition (notwithstanding that he had never met Plaintiff or his wife and so had no idea what equities they did or didn't have, and contrary to his statement to the Disciplinary Committee that Mr. Borges' marriage was fraudulent). He also testified that the "motion to reopen to reconsider" did not offer any explanation for Mr. Borges' nonappearance in court, didn't mention that he had married a U.S. citizen or filed a green card application, and did not even ask for the *in absentia* order to be vacated, that he did not care one way or another if it was granted, and that he had not spoken with Plaintiff prior to filing it, in order to find out why he had not attended his court hearing, and did not tell him when it was denied.   He also testified that there was no harm in Plaintiff being deported, even though Plaintiff would not have been eligible to even apply to return to the US for ten years after his deportation.   He acknowledged having erased the Entra America phone number on certain of Plaintiff's immigration documents that he filed with the Disciplinary Committee and replaced it with his own office phone number, but asserted it was part of his filing system. (O'Dwyer Decl, Exh. G).   Despite testifying as a witness for both sides, Defendant at no point denied or even responded to the central allegation in the case to

12

which Plaintiff had testified in detail: that he (Defendant) had instructed Ivan to tell Plaintiff not to attend his immigration court hearing.

At the close of testimony, the Court dismissed the fraud cause of action as duplicative of the malpractice claim. (O'Dwyer Decl, Exh. K).    The jury returned a verdict in favor of Plaintiff, finding *inter alia,* that Defendant had, through Ivan, instructed Plaintiff not to attend his immigration court hearing, and awarded $235,355 for loss of employment, $58,447 for legal fees, and $900,000.00 for pain and suffering.   (Ortiz Decl., ECF 12, Exhibit 13)    Torres (not Robinson) then filed a post-trial motion to set aside the verdict, which was denied, and judgment was subsequently entered.

Defendant's appeals from the judgment were then denied by the Appellate Term and again by Appellate Division, which in December 2014 ruled that "Defendant's argument that the damages awarded for the harm resulting from plaintiff's 14 months in detention constitute non-pecuniary damages that are not recoverable in a legal malpractice action is unpreserved."    Borges v Placeres, 123 A.D.3d 611, 2 N.Y.S.3d 75 (1st Dep't 2014).[1]    Defendant's motion for leave to appeal to the Court of Appeals was denied, in June 2015.    Torres continued to represent Defendant throughout all these appeals.

On January 22, 2015, Plaintiff, through counsel, served Defendant with an information subpoena, to which Defendant failed to respond.    Plaintiff then served Defendant with a contempt motion in civil court for his failure to respond, to which Defendant also failed to respond, and it was granted on default, including an award of $2,900 in counsel fees.

**3.  Defendant's bankruptcy proceeding.**

---

[1]  During oral argument at the Appellate Term, Mr. Torres was questioned as to whether or not it was malpractice for him to have failed to object to the jury instruction on emotional damages.

Defendant filed the instant petition for bankruptcy on March 23, 2015, claiming no assets of

any kind, income from employment of $1,000 per month and from social security of $1,100 per

month.    His schedules do not list any causes of action as assets or potential assets.

At the Creditor's Committee meeting held on August 25, 2015, Defendant testified that he had

been employed by another attorney, Raul Murelo, until about four years ago, that he had been trying

to start his own practice since then but without success, and that he works from his home but

sometimes meets clients in an attorney's office, at 55 Overlook Terrace, New York NY.    With

regard to Plaintiff's judgment against him, Defendant testified that it was because he had been

wrongly held responsible for the actions of someone else (presumably Ivan), but that the statute of

limitations on it had expired.    He testified, repeatedly, that "the disciplinary committee didn't find

any wrongdoing" and "the disciplinary committee dismissed the case".    He testified that he had no

causes of action against anyone else:

> MR. GELTZER:        So you didn't have any reason to sue anyone for personal injury,
>
> malpractice?
>
> MR. PLACERES:       No, sir.

(O'Dwyer Decl, Exh. I).    Later the same date, August 25, at his FRBP 2004 deposition,

Defendant testified that he had had his own immigration practice at 2710 Broadway in Manhattan

since 1984, that for a period of time he had a profit sharing arrangement with another attorney in

Queens, Raul Murelo, but that he was not employed by him ("I was not employed. We did not have

an employer/employee relationship").    He testified that this arrangement slowed down in 2001 and

ended around 2007, during which time he continued to maintain his own practice on a part-time basis,

in addition to co-hosting a radio program to answer call-in questions about immigration law for about

14

seventeen years, and being an invited guest on television shows to talk about immigration and

business issues, for about twenty years.    He testified that after the relationship ended with Mr.

Murelo, he continued his part-time practice, and also worked with a law firm in New Jersey called

Espinoza & Espinoza for about eighteen months, that they had wanted him to become a partner, but

that the relationship hadn't worked out.    (O'Dwyer Decl, Exh. J).

Defendant also testified that he had a cause of action against his attorney in the civil action,

for failing to object to the jury instruction on emotional distress damages, but that he didn't want to

pursue it because it would make him "feel bad".    He testified that he wasn't sure where the office of

Mr. Robinson (the attorney who had appeared at the trial on behalf of Mr. Torres) was located, that

Robinson was a "per diem" attorney who had appeared at the trial on behalf of Torres, that Torres had

introduced them, and that he had only met him once or possibly twice prior to the trial.

He testified that he lives with his wife, a retired court translator, in a $619-per-month rent

stabilized apartment, yet has no savings, investments, retirement accounts, pension plan, personal

property, real property, vehicles, or any assets other than a bank account with approximately $2,000,

and that his sister and his wife periodically give him money to live on.

He testified that he has been consistently represented by counsel for free since 2004, as a favor

to him by various attorneys.    This includes representation in proceedings at the Disciplinary

Committee by Walter Rivera in 2004- 2005, by Nestor Rosado in the civil action from 2004 through

2012, by Jose Luis Torres in the civil action from 2012 to 2015, including pre- and post-trial motions,

an interlocutory appeal to the Appellate Term in 2012, an appeal from the final judgment also to the

Appellate Term in 2013, a motion for leave to appeal to the Appellate Division in 2013, an appeal at

the Appellate Division in 2014, and a motion for leave to appeal to the Court of Appeals in 2015.

15

(O'Dwyer Decl, Exh. J).

In October 2015 Plaintiff commenced this adversary proceeding, seeking dismissal of the petition for cause, and for Defendant's deliberate omission from his schedules of the cause of action against his former counsel as an asset, and his refusal to either pursue it or assign it to Plaintiff, and denial of discharge of Plaintiff's judgment because it resulted from Defendant's fraud while acting in a fiduciary capacity as well as from his willful and malicious acts, and denial of discharge of the $2,900 fee award on the contempt motion.

On or about March 2016, the Court granted Plaintiff's motion to compel abandonment by the Trustee of Defendant's cause of action against the attorneys who had represented him at the trial. The Trustee opposed the motion, stating that Defendant had revealed this cause of action to him at the Creditor's Committee meeting and he had determined that it had no value.[2]   (Trustee's Opposition to Plaintiff's Motion for Abandonment of Property, Case No. 15-10691, ECF 31, ¶ 3)   Defendant also opposed the motion, claiming that Plaintiff had disclosed that cause of asset to the Trustee prior to the Trustee's August 27 No Asset report, and that the Trustee determined that it had no value. (Defendant's Opposition to Plaintiff's Motion for Abandonment of Property, Case No. 15-10691, ECF 33, ¶ 3)[3]   Shortly thereafter, on March 24, 2016, Defendant amended his bankruptcy schedule to list the cause of action as an asset, but stated (without explanation) that it had no value.   Since then, despite numerous requests by Plaintiff, Defendant refuses without justification to either pursue the cause of action and use the proceeds to satisfy Plaintiff's judgment in whole or in part, or else

---

[2]  The Trustee was incorrect – Defendant disclosed an entirely different cause of action, and was explicit in stating to the Trustee that he had no causes of action for malpractice against anyone else.

[3]  This too is incorrect – Plaintiff notified the Trustee about it in September, well after his "no asset" report had been issued.

assign it to Plaintiff.

On May 27, Defendant filed the instant Motion, seeking summary judgment. The Motion is supported by, *inter alia,* declarations by Defendant, Jose Luis Torres (Defendant's counsel of record at the trial of the civil action) and Brian Robinson (who appeared as "of counsel" to Mr. Torres at the trial of the civil action). (Ortiz Decl., ECF 12, Exhibits 4 and 5) Defendant's declaration (which is actually signed by his attorney and not by Defendant), states that he does not believe he has a claim for malpractice against his former attorneys, that his bankruptcy attorney never advised him he had such a claim, and that he believes it is only worth one dollar. (Ortiz Decl., ECF 12, Exhibit 3, ¶ 50, 57, 64)

Torres's declaration states that he had only agreed to represent Defendant in pre- and post-trial motions but not the actual trial itself, that Defendant retained Robinson separately to act as his trial counsel, that Robinson had his own office and was never employed by or served as trial counsel to Torres, and that he later learned that Robinson had "inadvertently" failed to submit a change of attorney form to the court. (Ortiz Decl., ECF 12, Exhibit 4) Robinson's declaration states that he was retained by Defendant to represent him at the trial, that he simply "forgot" to enter a notice of appearance, and that even though the court records reflect that he was appearing "of counsel" to Torres, that is "not factually correct". (Ortiz Decl., ECF 12, Exhibit 5)

During the last number of years, Mr. Placeres has received numerous awards and appeared as a panelist or speaker on issues of concern to the business community. These include being one of the judges at the 2016 Latino M/WBE Awards (giving the Corporate Partnership Award to Toyota); participating as an attorney and community leader on a call to set immigration priorities for the Hispanic Community in March 2015; speaking at a Village Independent Democrats forum on saving

and protecting small businesses, also in March 2015; speaking on (ironically) consumer protection at the 18th annual national conference of the Dominical American National Roundtable in 2015; being quoted in Impacto Latin News in 2014 and in Black Star News in 2015 alongside numerous local and state elected officials on the positive effect of awarding city contracts to black and women-owned businesses; noted for his advocacy around the DREAM Act (immigration legislation) in 2013; receiving a Latino Magazine Rayos Award "honoring individuals who have distinguished themselves in their respective fields of endeavor", recognizing "his advocacy on behalf of immigrants and small businesses"; receiving a "Green New York" award in 2011 and the M/WBE Advocate of the Year Award in 2010.    (O'Dwyer Decl., Exh. P)

## SUMMARY OF ARGUMENT

Defendant's motion to dismiss Counts I and IV of the Complaint (seeking dismissal for cause under 11 U.S.C. § 707(a) and 727(a) respectively) is basically premised on the argument that he has no assets, never had any assets, and lacks the ability to have any assets in the future such that he could discharge even part of the judgment, that the cause of action against his former counsel was not intentionally omitted from his schedules, and in any event it lacks any merit and thus any value because the statute of limitations on it has expired.    These arguments are unpersuasive.

Defendant's statements regarding his employment history are (at best) inconsistent.    His claim to have no assets whatsoever after decades in practice is implausible on its face, particularly when compared with his consistent receipt of awards for his work and advocacy, and his repeated inclusion as a speaker and panelist on business and immigration matters.    His assertion that he was simply unaware of the cause of action against his former attorney is simply not credible, and his claim that it would be untimely and thus without any value is flatly untrue.    All the relevant evidence

18

shows that such a claim would be timely, but that Defendant is propelled by loyalty to Torres to ensure that it is not pursued.    Because there are numerous factual disputes and unanswered questions about whether or not Defendant has been truthful regarding his employment history, income and assets, and his motivations in continuing to seek a discharge in bankruptcy while simultaneously refusing to pursue or assign the cause of action, the Court cannot grant summary judgment on either Count I or IV of the Complaint.

With regard to Count II, seeking denial of discharge for fraud while acting in a fiduciary capacity, Defendant argues that there was no "res" or trust, as required to establish a fiduciary relationship, and that the jury decided that (fraud) issue in Defendant's favor.    However, it is settled law in this circuit that the attorney-client relationship, even without the existence of a trust or "res", is by definition a fiduciary relationship for § 523(a)(4) purposes, and the trial record shows conclusively that the fraud issue was never put to the jury. Instead, it was dismissed at the close of the evidence as duplicative of the malpractice cause of action.    Thus, that branch of Defendant's motion must be denied.

With regard to Court IV, seeking denial of discharge for willful and malicious acts, Defendant repeats his argument that the jury found for him on the claim for intentional fraud and breach of fiduciary duty, and also argues that he was simply trying to defend himself when he lied about Plaintiff and his immigration case to the Disciplinary Committee.    Again, the issues of fraud and breach of fiduciary duty were never put to the jury, and for this reason alone that part of Defendant's motion must be denied.    The jury did, however, find that Defendant instructed Plaintiff not to attend his immigration court hearing, an act which is both willful, in that the harm (a deportation order) was certain to result from it, and malicious in that it constitutes wrongful conduct without just cause or

19

excuse.   And Defendant's lies to the Disciplinary Committee about Plaintiff, and about his role in

Plaintiff's immigration case, as well as his submission of forged documents, are beyond doubt willful

and malicious, and they were the reason his motion to reopen was denied.   As there is no factual

dispute here, the Court should deny Defendant's motion for summary judgment and grant Plaintiff's

cross-motion for summary judgment on Count IV.

## ARGUMENT

### 1.   The Motion to Dismiss Counts I and IV

Count I of the Complaint seeks dismissal of the bankruptcy petition on the basis that

Defendant's failure and refusal to discharge his debt to Plaintiff, despite having the opportunity to do

so, and his failure to be candid or credible about his income and assets, warrant dismissal of the

bankruptcy proceeding "for cause" pursuant to 11 U.S.C. § 707(a).   Specifically, it alleges that

Defendant filed the bankruptcy petition solely in order to frustrate payment of the judgment to

Plaintiff, that he has the opportunity and ability to discharge his debt to Plaintiff (or a substantial

portion thereof) either by working or by pursuing the malpractice cause of action against his former

attorneys, that his claim to have no assets or income after having been a practicing attorney for over

thirty years, and that he has been the consistent beneficiary of unexplained and spontaneous charitable

acts – over twelve years of free legal representation in over five different judicial fora, and free trips

to Mexico and the Caribbean - are simply not credible.

Count IV of the Complaint seeks dismissal on the basis that Defendant's failure to list the

cause of action for malpractice in his bankruptcy schedule warrants dismissal of the bankruptcy case

pursuant to 11 U.S.C. § 727(a).[4]

In seeking summary judgment dismissing Count I, Defendant cites the following "Lombardo"
factors to be applied to a claim for dismissal under 11 U.S.C. § 707(a): that the debtor's manipulations
having the effect of frustrating one particular creditor, the absence of an attempt to pay creditors, the
debtor having sufficient resources to pay a substantial portion of a debt, the debtor over utilizing
protections of the bankruptcy code to the unconscionable detriment of creditors, the debtor filing in
response to a judgment or pending litigation or collection action, an intent to avoid a single large debt,
failure by the debtor to make candid and full disclosure, and the unfairness of the use of the
bankruptcy code.   In re Lombardo, 370 B.R. 506, 512 (Bankr. E.D.N.Y. 2007).   He then argues, in
essence, that (a) his tax returns and bank statements show that he has no income or assets, and that
Plaintiff has no proof of anything to the contrary, and (b) he omitted the malpractice cause of action
from his schedules because his bankruptcy attorney never advised him to include it, and in any event
he has since amended his schedule to include it, but it lacks any merit or value.   Defendant
re-iterates this argument in support of his motion dismissing Count IV.   (Defendant's Memo, ECF
13, pp. 9 -10; 15)

Defendant's motion must be denied.

   a.   _Defendants's failure to make full and candid disclosure._

With regard to the motion to dismiss Count I, there is ample evidence from which a trier of
fact could infer that Defendant has not made full and candid disclosure regarding his employment,
income and assets.   At his deposition in the civil action in 2006, and again at his Rule 2004

---

[4] Since the Complaint was filed, Defendant amended his schedules to list this asset but has wrongly
stated that it has no value.

deposition in 2015, Defendant testified, essentially, that he has been practicing immigration law since the early 1980s at 2710 Broadway New York NY, that he had also worked with attorney Raul Murillo in Queens for a number of years, that he had begun to wind down that practice in 2001, and that it had stopped completely by 2007 or 2008, and that he was never employed by him. (O'Dwyer Decl., Exhibit F, pp. 12 – 18; Exhibit G, pp. 348 – 349; Exhibit J, pp. 10 - 14).    However, at the creditor's committee meeting on August 25, 2015, Defendant stated the opposite – that he had been working for Murelo until 2011, at which point he (Defendant) unsuccessfully tried to start his own practice. (O'Dwyer Decl., Exhibit I, pp. 7 – 8)

These misstatements are material, because they lent credence to his claims to have no assets and no income and no ability to generate income, and could well have closed off avenues of further inquiry, particularly as other evidence casts doubt on Defendant's claim to be incapable of generating income.    He has co-hosted a weekly immigration-related radio program for over seventeen years, and was a frequent guest on television, also answering immigration-related questions.    He is or until recently has been on the board of innumerable Chambers of Commerce and other related committees, is regularly invited to speak on panels about immigration and small businesses, and has received and continues to receive numerous awards and recognition for his work. (O'Dwyer Decl., Exhibit P) This is inconsistent with his claim to only be capable of earning about $1,000 per month as an attorney.

Defendant also claims to have been represented by numerous attorneys over the last twelve years for free (or, as with his current attorneys, at extremely low cost), a claim which is implausible simply because of the sheer amount of work and number of attorneys involved.    This raises a question as to whether or not Defendant has assets that he does not disclose.    Although there is

22

nothing remarkable about an attorney doing a favor for a colleague or friend, the amount and extent of legal services that Defendant claims to have received for free is simply not credible: representation at the Disciplinary Committee in 2003 and 2004 by Walter Rivera, eight years in the civil action, between 2004 and 2012, by Nestor Rosado, three years of litigation in the civil action, including pre and post-trial motions, two motions for leave to appeal, and three appeals, including oral argument at the Appellate Term and Appellate Division, and two years of investigation by the Disciplinary Committee between 2013 and 2015, by Mr. Torres, all for free.   (O'Dwyer Decl., Exhibit J, pp. 63 – 67)

Defendant also claims to be the regular recipient of free foreign travel, and his trips to the Dominican Republic, Mexico, and Puerto Rico have all been paid for by other people or were part of "humanitarian efforts", while cash deposits into his bank accounts are simply "gifts" of money from his family or else he doesn't recall their source.   (O'Dwyer Decl., Exhibit J, pp. 76 – 78; 83 – 94) Defendant's claim to be penniless and unable to generate any fee-paying work can only be contrasted with repeated images of him at social and community events, receiving and giving awards, and speaking with authority along with elected officials and professionals on business and immigration issues.   (O'Dwyer Decl., Exhibit P)

These varying facts and conflicting statements must be viewed in the light most favorable to Plaintiff, and all inferences resolved in his favor, Marvel Characters v. Simon, 310 F.3d 280, 286 (2nd Cir. 2003).   Through this prism, they constitute "specific evidence" (id.) sufficient to raise a genuine issue of material fact as to whether or not Defendant has made full and candid disclosure as to his assets and ability to discharge his debts.   This failure to make full and candid disclosure thus warrants denial of this branch of Defendant's motion for summary judgment.   Lombardo, supra, 370

B.R. 512.

       *b.*   *Defendant's misrepresentations and omissions about his cause of action against his former attorneys.*

The remainder of the <u>Lombardo</u> factors cited by Defendant all involve his initial refusal to disclose as an asset the malpractice cause of action against his former attorney, and then once confronted with its existence, to repeatedly misrepresent that it is timebarred and/or valueless.    He has also persistently refused to allow Plaintiff pursue it as Defendant's assignee.

Defendant argues that his failure to disclose this cause of action can be excused because his lawyer didn't tell him to do so, and that the cause of action has no merit anyway (presumably because he claims it is time barred).    (Defendant's memo, ECF 13, p. 10)    Neither of these arguments have any merit.

It is firmly settled law that a debtor cannot evade responsibility for such omissions by blaming his attorney (particularly when the debtor himself is an attorney).    <u>In Re Tylee</u>, 512 B.R. 409, 417 – 418, (Bankr. E.D.N.Y. 2014), citing <u>In re Spitko</u>, 357 B.R. 272, 313 (Bankr. E. D. Pa. 2006) and <u>In re Maletta</u>, 159 B.R. 108, 112 (Bankr. D. Conn. 1993).    Here, Defendant was on actual notice of trial counsel's failure to object to the jury instructions, as it was the reason his appeal was denied at the Appellate Term and the Appellate Division, and his case itself was one for legal malpractice. Defendant also acknowledged this claim in his Rule 2004 deposition, on the same day as the Creditor's Committee meeting. (O'Dwyer Decl., Exhibit J) Under these circumstances, Defendant's claim to have been unaware of the cause of action is simply not credible.

Further, the fact that Defendant subsequently amended his schedules to list the cause of action does not excuse its earlier omission.    "A debtor's disclosure of information previously omitted from schedules is some evidence of innocent intent, but this inference is "slight where the debtor has . . . amended his schedules after the trustee or creditors have already discovered what the debtor sought to hide."   In re Maletta, supra, 159 B.R. 112.    Here, Defendant did not amend his schedules to list the cause of action until after Plaintiff had alerted both the Court and the Trustee to its existence, via the motion to compel it abandonment, and so that does not negate his fraud or reckless indifference to the truth in omitting it initially.    And, of course (as argued below), Defendant then intentionally misstated its value as $1 once he did eventually amend his schedule to add it.    "[I]f a debtor's schedules reflect a reckless indifference to the truth, no further evidence of fraud need be adduced."   Id., 113.

The cause of action is also not time barred.    Robinson was counsel of record to Torres during the civil trial, and so Torres is liable for the failure to object to the jury instruction, and Torres's representation of Defendant ceased in June 2015, when the Appellate Division denied his motion for leave to appeal to the Court of Appeals, so any cause of action against him would be timely.    On January 31, 2012, seeking to appear in the civil action on behalf of Defendant, Torres executed a consent to change attorney, signed by himself and Defendant, and then filed a motion to amend the answer and for summary judgment.    (Ortiz Decl., ECF 12, Exh. 10)    That motion was denied on February 16, in part because pursuant to CPLR § 321(b), a consent to change attorney must be executed by the outgoing attorney, not by the incoming attorney.    (O'Dwyer Decl. Exh 10)    On February 20, 2012, Torres filed a properly-executed consent to change attorney, substituting himself as counsel of record for Defendant    (Ortiz Decl., ECF 12, Exh. 10)    , and jury selection commenced

25

three days later.    On the opening day of trial, February 24, attorney Brian Robinson entered his

appearance for Defendant as "From the offices of Jose Luis Torres, Brian Robinson, of Counsel, 202

Mamaroneck Next Avenue [sic], White Plains, New York".    Mr. Robinson's appearance was so

noted for the duration of the trial.    (O'Dwyer Decl. Exh R)    At no point did Robinson file a consent

to change attorneys or a notice of appearance.    The jury returned their verdict on March 2, 2012, and

two weeks later Torres filed a post-trial motion to set aside the verdict, without substituting himself

for Robinson, as would have been required if he believed Robinson had been counsel of record.

At his Rule 2004 deposition, Defendant repeatedly testified that Robinson was of counsel to

Torres:

> Q.    In 2012 Mr. Torres became involved?
> A.    Yes.
> Q.    He represented you throughout the trial?
> A.    He represented me, but he could not be the trial attorney.
> Q.    Mr. Robinson appeared on his behalf?
> A.    Yes.

And again:

> Q.    [Robinson] appeared on behalf of Mr. Torres?
> A.    Yes.

And again:

> Q.    [Robinson] appeared on behalf of the law office or Mr. Torres?
> A.    Yes.
> Q.    He never filed a separate notice of appearance on your behalf?
> A.    No.

Defendant also testified that Robinson had been introduced to him by Torres, that he only met

him once before the trial but was not sure when, that he (Robinson) worked *per diem* for other

attorneys, that he didn't know how much experience Robinson had or even if he had ever tried a case

before, that he didn't know where his office was located, and had not spoken to him at all since the

conclusion of the trial.    Defendant also testified that if an objection had been raised at trial to the jury

charge on non-pecuniary damages it would have been vacated on appeal, but that he didn't have a

claim for malpractice because Robinson "probably did the best that he could" and because it would

have made him feel bad. (O'Dwyer Decl. Exh J)

The declarations of Defendant, Torres and Robinson submitted in support of the Motion to

Dismiss (Ortiz Decl. ECF 11, Ech. 4 and 5), all stating that Robinson simply "forgot" to become

counsel of record at the trial, lack any persuasive value, as they are all inflected with self-interest, and

run directly counter to the independent and objective evidence of record cited to above.    Resolving

all "inferences and ambiguities" against Defendant, it is clear that Defendant has a cause of action for

malpractice against Torres for $900,000 (plus 9% annual statutory interest since September 2012),

that Defendant has omitted this cause of action from his schedules, denied to the Trustee that it

existed, and then repeatedly denied that it has any value, for no reason other than to frustrate

Plaintiff's ability to recover on his judgment and also to insulate Torres, his long-time friend, from

any liability.[5]

As Defendant correctly points out, factors constituting good cause for dismissal under 11

U.S.C. § 707(a), include manipulations to frustrate one particular creditor, absence of attempt to pay

creditors, resources to pay "a substantial portion" of the debts, overutilization of the code to the

unconscionable detriment of creditors, fighting for bankruptcy in response to a judgment (Defendant's

memo at Page 9).    Application of these factors to this case certainly precludes granting Defendant's

---

[5]  Indeed, the determinative question here is not whether the cause of action is or isn't time barred –to
the extent that is a question, it is more properly answered by a court where that cause of action is
being tried. Instead, the determinative question is whether Defendant initially tried to hide it and then
deliberately misrepresented its value.

Pg 28 of 39

motion for summary judgment.

This cause of action is of no use to Defendant, and yet he has consistently refused to either pursue it or else assign it to Plaintiff.   This shows Defendant's ongoing spite and ill will toward Plaintiff, and makes crystal clear that by now, the sole purpose of his bankruptcy case is to insulate Torres from liability, and not to give Defendant a fresh start (indeed, by assigning the cause of action Defendant could avoid bankruptcy altogether, as he admits it is filed solely to discharge the judgment) and give his creditors an equitable distribution of his estate, which is the true purpose of a Chapter 7 proceeding.   In re Maletta, supra, 159 B.R. 111.   It is also reasonable to conclude that Defendant waited until after he believed the statute of limitations had expired on that malpractice claim before filing his Chapter 7 case, as the trial in the civil action, and Robinson's involvement, ended in early March 2012, and Defendant filed the Chapter 7 case exactly three years and two weeks later.

Further, Plaintiff has also alleged that Torres failed to argue on appeal for an "interests of justice" exception to the rule that an objection to a jury charge is waived if not timely raised (Complaint, ¶ 54) thus giving rise to a cause of action for malpractice on that basis also (id,. ¶¶ 75, 99); Defendant does not address this cause of action at all in his motion to Dismiss, and so any argument in that regard is waived.[6]   Thus, even if the court were to grant Defendant's motion for summary judgment based on Defendant's failure to include the cause of action arising from Robinson's trial omissions, Plaintiff's claim that Defendant has a cause of action against Torres arising from his failures to raise specific arguments on appeal remains intact.

In sum, the evidence shows conclusively that Defendant has a viable claim for legal

---

[6]  This was also raised by Plaintiff in his motion to compel abandonment, and so Defendant cannot claim to be surprised by it.

malpractice against Torres which he refuses to either pursue or assign to Plaintiff, and instead wants to use this bankruptcy proceeding to see Plaintiff's judgment go unpaid, and to insulate Torres, his long-time friend, from any liability.   This type of wholly improper use of the bankruptcy courts for a dishonest and collateral objective is not allowed.   See In Re Blumenburg, 263 B.R. 707 (Bankr. EDNY 2001) (dismissing for cause bankruptcy petition filed as a vehicle to attack a state court judgment), and In Re Asset Resolution Corp, 2016 Bankr. LEXIS 2002 (D.Ct. Kansas 2016) (dismissing for cause Chapter 7 case filed as a litigation tactic and not as a means to liquidate assets and benefit creditors).   This Court cannot and should not condone such an abuse of the bankruptcy code by Defendant.   Because there are at the very least serious questions about Defendant's candor and honesty in disclosing and then misstating the value of this cause of action, the Court must deny this branch of his motion for summary judgment.

> c.   *The cause of action under 11 U.S.C. § 727(a).*

Plaintiff's Complaint also cited to 11 U.S.C. §§ 727(a)(3), (5) and (12) as grounds for dismissal in its opening paragraph, but Count 4 of the complaint, asserting that Defendant's failure to list this cause of action against his former counsel as an asset warranted dismissal, cited more generally to § 727(a) .   Defendant argues that the facts alleged does not warrant dismissal of the bankruptcy petition under § 727(a)(5) (failure of debtor to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities). (Defendant's memo, p. 15)

Plainly, the reference to § 727(a)(12) in the opening paragraph of the Complaint was error. The obvious and correct intended reference was to § 727(a)(4) (made a false oath), as the Complaint allege that Defendant had refused to disclose the cause of action against his former counsel in the schedules, and refused to amend the schedules once it had been disclosed.   Once the Motion was

29

granted, Defendant amended his schedules and listed the cause of action, but falsely stated that it has

no value.    Since the Complaint was filed, Plaintiff discovered that Defendant gave false statements

to the Trustee at the § 341 hearing, namely, that he categorically denied having any cause of action

for malpractice against anyone, and also had been employed by another attorney until four or five

years ago, after which he had unsuccessfully tried to open his own practice.

Defendant has also submitted with this Motion declarations containing false or misleading

statements, not only from himself but also from Torres and Robinson, in which they each denied that

Robinson was "of counsel" to Torres (thus supporting Defendant's insistence that any cause of action

against Torres is time barred) – denials which, as argued above, are flatly contradicted by the

independent, objective and contemporaneous evidence of record.

The Court should therefore either treat Count IV of the Complaint as arising under §

727(a)(4), or else deem it so amended, or alternatively if necessary grant Plaintiff leave to file an

amended complaint containing the above facts which have arisen or been discovered since the date

the complaint was filed, and which states an objection to discharge under § 727(a)(4).    This does not

prejudice Defendant, as he has already alleged and argued these facts in this Motion.

These false statements by Defendant at the § 341 hearing were material.    If Defendant had

told the Trustee that he had a malpractice cause of action potentially worth at least $900,000, the

Trustee may well have at least investigated the claim.    Instead, it seems likely that even at the time

of the Motion to Compel Abandonment, the Trustee still considered the claim which Plaintiff sought

to be abandoned to be one against Ivan, as he stood by his position that it had been disclosed at the

creditors committee meeting, that he had investigated it, and found it not worth pursuing by the time

he filed the "no asset" report on August 27, 2015.    However, the Trustee was not made aware of the

existence of the cause of action for malpractice against trial counsel in the civil action until well after

August 27, and so he could not have investigated it and determined that it was of inconsequential

value to the estate by that date.

Without doubt, these constitute material misrepresentations that warrant a denial of a

discharge of the judgment under § 727(a)(4).    Defendant made repeated false oaths, not only when

he omitted the claim from his schedules, then lied at the 341 hearing by denying the existence of the

claim, and then lied by listed the claim in his schedules as having no value.    This is in addition to his

misrepresentations at the 341 hearing about his employment history (that he had been employed by

another attorney up to four years ago and then tried successfully to open his own practice).

Each of these statements are plainly false, whether considered individually or cumulatively,

and they are material in that they related to the ability to determine Defendant's financial affairs.    "A

statement is material if it is pertinent to the discovery of assets.    Furthermore, even if each falsehood

or omission considered separately may be too immaterial to warrant a denial of a discharge pursuant

to § 727(a)(4)(A) . . . [a] multitude of discrepancies, falsehoods and omissions taken collectively . . .

[may be of] sufficient materiality to bar the Debtor's discharge."    In re Maletta, supra, 159 B.R. at

113 (Bankr. D. Conn. 1993).    These repeated falsehoods and misrepresentations by Defendant

precludes summary judgment for him, regardless of the subsection of § 727(a) under which it is

considered.    Thus his motion to dismiss Count III of the Complaint must be denied.

**2.** **Defendant's motion to dismiss the cause of action for fraud in a fiduciary capacity and for willful and malicious acts.**

Counts II and IV of the Complaint seek denial of discharge of Plaintiff's judgment under 11

U.S.C. §§ 523(a)(4) and (6) because it results from Defendant's fraud while acting in a fiduciary

capacity and from his willful and malicious acts, respectively.    Defendant moves to dismiss both

counts, arguing that fiduciary in this context requires the existence of an actual trust or res, that the

jury considered and rejected claims of breach of fiduciary duty and fraud, and that "Defendant was

forced to defend himself before the Disciplinary Committee and asserts that his statements were

designed for that purpose" (Defendant's memo of law, Page 11).    Defendant is wrong on each

argument.

        a.  _The Motion to Dismiss Count II – Fraud While Acting in a Fiduciary Capacity._

Defendant's argument, that because the debt did not arise from an express or technical trust, it

cannot be deemed non-dischargeable under § 523(a)(4), is incorrect.    While courts have generally

required an express or technical trust in order to establish a § 523(a)(4) fiduciary relationship, in New

York, where the debtor is an attorney and the debt arises from the attorney-client relationship, the

existence of the attorney-client relationship, without more, has consistently been held sufficient to

establish the fiduciary relationship.    The Second Circuit Court of Appeals, in <u>Andy Warhol Found.</u>

<u>for Visual Arts, Inc. v. Hayes (In re Hayes)</u>, 183 F.3d 162 (2nd Cir. 1999), explicitly rejected the

argument proffered by Defendant in the instant motion, holding that "We respectfully disagree with

that reasoning. Instead, we [hold] that the attorney-client relationship, without more, constitutes a

fiduciary relationship within the meaning of Section 523(a)(4)", <u>id.</u>, 170.    See also <u>In Re Gans</u>, 75

B.R. 474 (S.D.N.Y. 1987) (cited by Defendants for the contrary proposition), holding that "It is

axiomatic that the attorney-client relationship is a fiduciary relationship.    Where a debtor-attorney is

found to have breached the fiduciary duty to the client, _any debt_ arising within the fiduciary

relationship may be nondischargeable pursuant to Section 523(a)(4)." <u>Id.</u>, 490 (emphasis added).    <u>In</u>

<u>Re Gans</u> cited with approval to <u>In Re Gelman</u>, 47 B.R. 735 (Bankr. S.D. Fla. 1985), where the

bankruptcy court denied discharge of a judgment against an attorney sounding in malpractice and

fraud, finding that he had acted in a fiduciary capacity for purposes of Section 523(a)(4), despite the

absence of any "express, technical or statutory trust."

In Re Salim, 2015 Bankr. LEXIS 815 (E.D.N.Y. 2015) (Defendant's Memo, p. 11) is not

relevant to the issue at bar, as the debtor there was not an attorney, and so the existence of a trust had

to be independently established in order for Section 523(a)(4) to apply.    Thus, Defendant's

argument, that he was not a fiduciary within the context of § 523(a)(4), must be rejected.

Defendant also argues, flatly contrary to the civil action trial record, that "this same [fraud]

argument was raised in support of a fraud claim in the Civil Action, and a jury found that the same

acts complained of herein did not constitute fraud" and that thus the issue is barred from re-litigation

in this case by the doctrine of res judicata and claim preclusion.    (Defendant's Memo, p. 11).    This

is flatly untrue.    The cause of action for fraud was dismissed by the trial court as duplicative of the

cause of action for malpractice, prior to the case being submitted to the jury.    (O'Dwyer Decl., Exh.

K) The doctrine of res judicata and claim preclusion thus do not apply here, nor do they apply to

Defendant's similar argument regarding his willful and malicious conduct (Defendant's memo, p. 13).

These are the only two arguments (that Defendant was not a fiduciary for purposes of §

523(a)(4), and that the fraud claims were rejected by the jury in the civil action) made in support of

Defendant's motion for summary judgment on the 11 U.S.C. § 523(a)(4) claim.    As they are both

incorrect, that branch of his motion must be denied.

b.   _The Motion to Dismiss Count III - Willful and Malicious Injury._

The motion to dismiss the cause of action based on willful and malicious injury must likewise

be denied.    First, contrary to Defendant's argument that "the jury found that Plaintiff's conduct

consisted of legal malpractice… and not intentional fraud or breach of fiduciary duty", those claims were dismissed by the trial court as duplicative of the malpractice cause of action, and were not submitted to the jury.   (O'Dwyer Decl., Exh. K)

Defendant's next argument in support of his motion for summary judgment, dismissing the "willful and malicious" injury objection to discharge, is that he merely "attempted to help [Plaintiff] avoid deportation, and nothing more", and that the lies he told the Disciplinary Committee about Plaintiff – that his marriage was fraudulent, and that he missed his court date because he didn't want to take time off from work – were only made because "Defendant was forced to defend himself and his statements were designed for that purpose."   This argument is preposterous.

All relevant facts show that the only thing Defendant did in the course of his representation of Plaintiff was to make it inevitable that he would be ordered deported, by instructing him not to attend his immigration court hearing, thus resulting in the *in absentia* order, and then failing to file a proper motion to vacate it, and failing to tell Plaintiff that it had been denied.   Defendant then repeatedly lied to the Disciplinary Committee not only about these facts, but also about Plaintiff, stating that his marriage was fraudulent and that he had deliberately failed to attend his scheduled immigration court hearing because he didn't want to take time off from work.   This *in absentia* order, and Defendant's subsequent lies about the circumstances surrounding it, were the reasons Defendant lost his job, spend 14 months in immigration custody, and incurred tens of thousands in legal fees to resolve the problem, and for which the jury awarded him the damages underlying the judgment Defendant now seeks to discharge.

It was litigated and decided conclusively against Defendant in the civil action that he instructed Plaintiff not to attend his February 1998 deportation hearing.   That instruction is plainly a

34

willful and malicious act.    Plaintiff repeatedly testified that Ivan advised him not to attend his

removal hearing, claiming that she was relaying advice and instructions from Defendant.

Defendant's attorney did not object to this testimony from Plaintiff; on the contrary, he repeatedly

elicited it, over and over.    (O'Dwyer Decl., Exh. H)    In his testimony, Defendant did not deny this

giving this instruction.    As a result, the Court, noted the extensive questioning by both counsel on

the involvement of Ms. Ivan, instructed the jury that the parties had agreed that Defendant was

responsible for communications and advice given to Plaintiff by Ivan.    (O'Dwyer Decl., Exh. L)

The jury then found that Defendant had, through Ivan, instructed Plaintiff not to attend his deportation

hearing.    (Ortiz Decl. ECF 11, Exh. 11)    The Appellate Division rejected Defendant's argument of

error on this instruction as "unavailing".    <u>Borges v. Placeres</u>, 2 N.Y.S.3d 75 (1st Dept. 2014)

Under New York's preclusion doctrine, "collateral estoppel bars a party from relitigating in a

second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding,

if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision

of the issue was necessary to support a valid and final judgment on the merits.'"    <u>Rocco v. Goldberg</u>

<u>(In re Goldberg)</u>, 487 B.R. 112, 121 (Bankr. E.D.N.Y. 2013) (citing authorities).    It has thus been

litigated and decided in the civil action that Defendant instructed Plaintiff not to attend his

immigration court hearing.    That finding is thus *res judicata* and cannot be re-litigated here.

As Defendant well knew, the only possible outcome of Plaintiff's failure to attend a

deportation hearing is an *in absentia* order.    Indeed, in his responses to Plaintiff's complaint at the

disciplinary committee, Defendant repeatedly stated that Plaintiff should have known that he would

be deported if he failed to attend his Court hearing.    (O'Dwyer Decl., Exh. B)    Certainly if Plaintiff,

a lay person, is expected to have known this, then Defendant, as his immigration attorney most

definitely would have known that, as such an outcome is mandated by statute, see 8 U.S.C. §

1229a(b)(5)(A).

As Defendant correctly argues, "if a proposed injury is certain to occur, a Court may find

willfulness" In Re Khafaga, 419 B.R. 539, 548 549 (Bankr. E.D.N.Y. 2009), and "malice means

wrongful conduct without just cause or excuse even in the absence of personal hatred, spite or ill

will", In Re Stelluti, 94 F.3d 84, 87, 88 (2nd Cir. 1996).    "Implied malice may be demonstrated by

the acts and conduct of the debtor in the context of [the] surrounding circumstances." Id.. (internal

quotations omitted).    Here, Defendant's instruction to Plaintiff not to attend his immigration court

hearing was willful, in that the injury (the deportation order) was certain to occur as a result, and was

also malicious, in that it was wrongful and without any just cause or excuse.    The in absentia order

was the cause of Plaintiff's loss of employment, additional legal fees, and his detention and ensuing

emotional injuries, all of which were the basis for the judgment which Defendant now seeks to

discharge.

Defendant's responses to Plaintiff's complaint about him to the Disciplinary Committee were

also willful and malicious.    First, Defendant insisted that he was the one who had done everything on

Plaintiff's case, denied that Plaintiff had been instructed not to attend his court hearing, submitted

receipts for payments he claimed Plaintiff had made to him, gave details of meetings he claimed to

have had with Plaintiff, and insisted that the PO Box address on the immigration forms belonged to

him and not Ivan, stating that he had had it for over twenty years.    He also stated that Plaintiff had

told him he did not attend his court hearing because he didn't want to take time from work and

because he was afraid of the Immigration Judge, and that he had withdrawn from Plaintiff's

immigration case because he believed the marriage was fraudulent.    This response was submitted by

36

Plaintiff with his motion to reopen, and was one of the reasons the BIA denied it.    He also altered

some of Plaintiff's immigration forms that had previously been filed with immigration, erasing Ivan's

phone number and replacing it with his own.

Once Plaintiff's immigration case was over, Defendant admitted that each of these statements

were false.    He admitted that he had, in fact, never met Plaintiff (and thus his statements, that

Plaintiff had told him he didn't attend the court hearing because he didn't want to take time off from

work, and that he had to withdraw from representing Plaintiff because he believed his marriage was

fraudulent, were also false, and the receipts for payments and the notes of his meetings with Plaintiff,

were fake).    He admitted that Ivan had done all of the work on Plaintiff's immigration case, and that

he had merely signed Plaintiff's immigration papers after Ivan prepared them (and not only on

Plaintiff's case but on many others also).    He admitted that the PO Box had been rented by Ivan for

over twenty years, until July 2004, when he assumed the rental (when Plaintiff was already in

immigration custody).    He admitted that he knew Plaintiff was in immigration custody fighting

deportation to Venezuela, but made no effort to correct his misstatements.    (O'Dwyer Decl., Exh. G)

It is difficult to imagine more reprehensible actions.

Each of these oral and written statements is individually willful and malicious, and together

they are collectively willful and malicious.    They were willful in that a proposed injury was certain

to occur (In Re Salim, supra, 2015 Bankr. LEXIS 815, * 65): the only possible outcome of

Defendant's statements, that Plaintiff deliberately chose to miss his immigration court hearing, and

that his marriage (which was the basis for his permanent residence application) was fraudulent, was

that Plaintiff's motion to reopen would be denied, or at least made far more difficult.    Likewise, his

statements that he had met with Plaintiff (even recounting in detail to the Disciplinary Committee a

meeting which never took place), his statements about the PO Box rental and his surreptitious assumption thereof, his submission of the altered immigration forms and fake receipts for payments by Plaintiff, were made with the sole intent of leading the Committee and the immigration agency to believe that Defendant had diligently represented Plaintiff and that the entry of the *in absentia* order was due to Plaintiff's own misfeasance and not to ineffective assistance of counsel or fraud.   Thus, denial of Plaintiff's motion to reopen, and prejudicing the immigration agency against him, were the likely and intended outcome of these statements.

These statements were also malicious and wrongful, in that they were made without just cause or excuse, In Re Stelluti, supra, 94 F.3d   87, 88 (2nd Cir. 1996).   Defendant's only proffered justification in this motion is that he was "forced to defend himself before the disciplinary committee, and asserts that his statements were designed for that purpose" (Defendant's memo, Page 14.)   That is irrelevant to the question of whether or not they were willful and malicious.   Further, even that "self defense" argument is undermined by the malicious nature of Defendant's gratuitous statements about Plaintiff, that he intentionally missed his court date because he didn't want to take time off work, and that his marriage (on which Plaintiff's entire immigration case rested) was fraudulent (not to mention the overall implication that Plaintiff was a liar).   And they were (along with Defendant's failure to properly move to vacate the *in absentia* order in April 1998) responsible for the initial denial of Plaintiff's second Motion to Reopen, resulting in an almost two-year delay while the Court of Appeals reviewed his case, during which time he lost his job, was in immigration custody, and incurred significant legal expenses in trying to resolve his case.

It is no longer disputed that Defendant made the statements in question, and that they were responsible for the harm Plaintiff suffered, which was in turn the basis for the verdict and the

38

judgment that Defendant now seeks to discharge.    There being no genuine issue of material fact here, and Plaintiff having shown that Defendant's debt arises from Defendant's willful and malicious acts, the Court should deny Defendant's motion for summary judgment and instead grant Plaintiff's cross-motion for summary judgment on Count Three of the Complaint.

**3. Plaintiff has no objection to Count V of the Complaint being dismissed.**

Defendant has also moved to dismiss Count V of the Complaint – denial of discharge of the $2,900.00 fee award granted counsel herein in conjunction with the contempt motion in civil court. For no reason other than the fact that even if the Court denies discharge or dismisses the Complaint, Plaintiff is unlikely to recover this money from Defendant, and so he hereby elects not to pursue that claim at this time.    Accordingly, Plaintiff has no objection to the Court dismissing that Count of the complaint.

**CONCLUSION**

For any and all of the foregoing reasons, Defendant's motion for summary judgment should be denied, and Plaintiff's cross-motion motion for summary judgment on Count IV should be granted, along with such further and other relief as to Court may be just and proper.

Dated:        New York, New York
              June 16, 2016


/s/ Paul O'Dwyer
Paul O'Dwyer, Esq.
Law Office of Paul O'Dwyer, P.C.
Attorney for Plaintiff Jose Borges
134 West 26 Street, Suite 902
New York NY 10001
Telephone (646) 230-7444
paul.odwyer@paulodwyerlaw.com