UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

ALFRED PLACERES, Case No. 15-10691 (SMB)

Debtor. Chapter 7
-------------------------------------------------------------x
JOSE BORGES,

Plaintiff, Adv. Proc. No. 15-01356-SMB
-against-

ALFRED PLACERES,

Defendant.
-------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Dated: July 6, 2016
Astoria, New York

*<u>S/Norma E. Ortiz</u>*
Norma E. Ortiz
ORTIZ & ORTIZ, L.L.P.
32-72 Steinway Street, Ste. 401
Astoria, New York 11103
Defendant's Counsel

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

A. Pre-Bankruptcy Conduct

### *I. Legal Representation of the Plaintiff*

The Plaintiff's claims against the Defendant in the instant adversary proceeding can be viewed as arising from three separate series of events: The claims arising from the Defendant's legal representation of the Plaintiff from 1998 to 1999 ("Legal Representation"), the claims arising from the Defendant's defense of the complaint filed against him by the Plaintiff with the Disciplinary Committee in 2003 ("Ethics Defense"), and the Defendant's conduct in connection with the instant bankruptcy proceeding. There is no dispute that the claims arising from the Defendant's Legal Representation and the Ethics Defense were the subject of a complaint filed in and prosecuted before the New York City Civil Court (the "Civil Complaint"), after five days of trial, and resulted in a judgment (the "Judgment") against the Defendant for legal malpractice. See Civil Complaint annexed as Exhibit 1 and Judgment annexed as Exhibit 2. Pursuant to Counts 2 and 3 of the Complaint, the Plaintiff seeks to have the debt set forth in the Judgment deemed nondischargeable under Bankruptcy Code Sections 523(a)(4) and (6) by alleging that the debt arose as a result of the Defendant's fiduciary fraud and/or arose as a result of the Defendant's willful and malicious injury to the Plaintiff.

There is no dispute regarding the following material facts, as amended by the Plaintiff in his Local Bankr. Rule 7056.1 Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Rule 7056.1 Response"). The Plaintiff was directed by the Immigration Court in Newark to appear on January 27, 1998, with an attorney, after appearing three previous times *pro se*. Rule 7056.1 Response at Paragraph 3. Two weeks before the hearing date, the Plaintiff sought legal representation from a paralegal company owned and operated by Adela Ivan

("Ivan"); Ivan represented that she worked with the Defendant as a paralegal. Rule 7056.1 Response at Paragraphs 4, 5. The Defendant never met with or spoke directly to Plaintiff. Rule 7056.1 Response at Par. 6. Ivan provided the Plaintiff with a Motion to Change Venue and informed that the Defendant could not appear before the Immigration Court on January 27, 1998; The Plaintiff was instructed to appear with the motion before the Immigration Court without the Defendant and ask for an adjournment. Rule 7056.1 Response at Paragraphs 7, 8.

Plaintiff appeared on January 27th, filed the Defendant's Notice of Appearance and the motion. The motion was denied and the Plaintiff was told to appear in one week with counsel, on February 3, 1998, or he would face deportation. Rule 7056.1 Response at Paragraphs 9-11. Two days after the January 27th hearing, the Plaintiff married his wife, Julie LaMarca. On that same day, Plaintiff and his wife completed forms to request a green card, based on the marriage, at Ivan's office and paid the fee to Ivan for Defendant to file the application. Rule 7056.1 Response at Paragraphs 14. The Plaintiff was informed by Ivan that the Defendant instructed the Defendant not to appear on February 3rd because a green card application had been submitted on his behalf. Rule 7056.1 Response at Paragraphs 12-13. Neither the Plaintiff nor Defendant appeared at the Plaintiff's hearing before the Immigration Court and Plaintiff was ordered deported *in absentia* by the court. Rule 7056.1 Response at Paragraphs 13.

The Plaintiff alleges as follows: After receiving a notice from INS to appear in April 1998 to appear for deportation to Venezuela, Rule 7056.1 Response at Paragraphs 15, a motion to reopen to reconsider was allegedly filed by the Defendant on April 25, 1998.[1] The Defendant

[1] The Plaintiff's use of the term "allegedly" implies that the Defendant did not prepare the motion. However, the evidence cited does not support this contention. Ex. H does not refer to this motion at all. Ex. Q consists of a nine page Declaration of the Plaintiff that does not set

asserts that the motion was filed to attempt to stay the deportation order. However, the Plaintiff simply denies that the motion to reopen was designed to obtain a stay, in Rule 7056.1 Response Paragraph 17, but provides no evidence or explanation of his denial, and ignores the fact that this allegation was taken from the Plaintiff's complaint. The Defendant never informed the Plaintiff that the Motion to reopen was denied in June 1998; he did not learn of the denial until April 2000. Rule 7056.1 Response at Paragraphs 18, 20, 21.

Plaintiff denies the Defendant's contention that the Defendant ceased representing him in 1999, but fails to provide any evidence of services rendered after 1999. Rule 7056.1 Response at Paragraphs 22. Therefore, there appears to be no dispute that the Defendant ceased providing legal services to the Plaintiff after 1999.

***II. Defense of the Ethics Complaint***

The Plaintiff retained new counsel in or about 2002, and two motions to reopen were filed in 2003. The Plaintiff filed an ethics complaint in 2003 with the Disciplinary Committee ("DC") and the Defendant's response to the complaint was submitted to the court deciding the Motion to Reopen. In the complaint, the Plaintiff alleged the Defendant never met the Plaintiff, did not perform any work on his case, Ivan forged the Defendant's name on the legal documents, Ivan's – and not the Defendant's – address was on the legal documents, the Defendant instructed Ivan to instruct the Plaintiff not to attend his immigration court hearing, and the Plaintiff had been eligible for relied based upon his marriage to a U.S. citizen. Rule 7056.1 Response Paragraph 30. In the Defendant's response to the complaint, he alleged that he had performed all of the legal work for the Plaintiff; the address used on the immigration forms prepared for the Plaintiff

---

forth any evidence to support this assertion other than the Plaintiff's unsubstantiated accusations.

belonged to him, not Ivan; he denied telling the Plaintiff, through Ivan, not to attend the February 3rd deportation hearing; he stated the Plaintiff did not attend the hearing because he did not want to take off from his job; it was obvious the Plaintiff would have been deported if he did not attend the February 3rd hearing; and the Defendant believed the marriage was fraudulent. Rule 7056.1 Response Paragraphs 24 ("Defendant's Ethics Defense"). The first motion to reopen was denied because it was untimely, and because the Defendant's response "had a the ring of truth." Rule 7056.1 Response Paragraph 25. After a second motion, and an appeal, the deportation order was ultimately vacated.

The Plaintiff accused the Defendant of submitting false documents to the DC, in the form of false receipts for legal fees, legal documents with alterations to the phone numbers and address of the Defendant. Rule 7056.1 Response Paragraphs 34 and 35.[2] The Plaintiff accused the Defendant of falsely representing that he utilized a post office box that the Plaintiff alleged was owned by Ivan. Rule 7056.1 Response Paragraphs 36. The DC considered all of the Plaintiff's arguments, and deposed the Defendant. It concluded that the Defendant was guilty of two acts: failing to attend the immigration hearing and failing to submit a complete and accurate copy of the file to the DC. The Plaintiff was issued a formal admonition by the DC in 2015. Rule 7056.1 Response Paragraph 32.

### *III. The Civil Court Action and Judgment*

There is no dispute that the Plaintiff sued the Defendant in 2003 for negligence, fraud,

[2] Although the Plaintiff's disputes the facts set forth in the Defendant's Rule 7056 Statement in Paragraph 35, and provides a counter-statement with no supporting evidence, he ignores the fact that the facts asserted by the Defendant were taken directly from the Plaintiff's complaint and sworn testimony at trial.

legal malpractice, breach of contract, negligent supervision, intentional infliction of emotional distress, breach of fiduciary duty, and statutory treble damages. Reply Ex. 1. The case was not tried until 2012. The court dismissed the fraud and breach of fiduciary duty actions as duplicative of the malpractice action. Rule 7056.1 Response Paragraphs 39. But the Plaintiff's fails to admit that the court fully considered the Plaintiff's fraud claim against the Defendant before it was dismissed. The Plaintiff was provided the opportunity to brief the issue of fraud, and present an offer of proof to the court, before the court ruled that there was no viable claim for fraud.

Therefore, despite the Plaintiff's arguments to the contrary, the Plaintiff was provided numerous opportunities to preserve and prosecute his fraud claims, but the court found insufficient evidence to support the claims. Over five days of trial, the following was asserted by the Plaintiff and determined by the court:

> ...the facts that would support a cause of action for fraud in this case and that would support a cause of action for malpractice are not the same.
> (Feb. 24, 2012, P.4, L.9-12) (Statement by Mr. O'Dwyer ("OD")) Reply Ex. 3.

> ...the facts that would underlie the cause of fraud were the facts that Mr. Placeres essentially worked with a notario [Ivan] to defraud Mr. Borges into believing that he was his lawyer. That is not legal malpractice. That is fraud.
> (Feb. 24, 2012, P.4, L.16-20) (OD) Reply Ex. 3.

The Court asked if Mr. Placeres a participant or a party to this fraud? The Plaintiff responded:

> [Mr. Placeres] subsequently attempted to hide his participation in the fraud to Mr. Borges detriments by falsifying documents, forging documents, that he made misrepresentation to the course of his advice, in the course of Mr. Borges' attempts to fix his immigration status. That cannot possibly constitute malpractice because Mr. Placeres' representation was probably over at that point.
> (Feb. 24, 2012, P.4, L.23-25; P5, L1-5) (OD) Reply Ex. 3.

[M]y client's position has always been that since the commencement of this action Mr. Placeres didn't represent him, although Mr. Placeres said he did. But my client said, as you know, that it was this notario [Ivan] who helped him, who did all of the work, did the whole thing.
(Feb. 24, 2012, P. 5, L 11-17) (OD) Reply Ex. 3.

We have a claim for legal malpractice to the extent that Mr. Placeres insists that he was [Mr. Borges'] lawyer. Fine. If the jury believes that then it was a malpractice claim.
(Feb. 24, 2012, P. 5, L 18-22) (OD) Reply Ex. 3.

I think that if the facts that underlie the malpractice and the fraud claim from identical, and only those facts, then I absolutely agree with you. But I think in this case that the facts are divisible. They are interrelated. They are not completely unrelated, but they are divisible.
(Feb. 24, 2012, P. 6, L. 8-13) (OD) Reply Ex. 3.

[E]ven if we established an attorney/client relationship between my client and Mr. Placeres I think that there were acts that were taken by Mr. Placeres outside of that attorney/client relationship that would constitute fraud. That is the essence of why I am saying that it shouldn't be dismissed.[3]
(Feb. 24, 2012, P.8, L. 22-25) (OD) Reply Ex. 3.

I agree, I think I have already said that if the only facts related to the manner in which Mr. Placeres represented my client before the immigration tribunals, that is, we would have a hard time establishing fraud in that connection unless there were other facts that fell outside of this attorney/client relationship and the work that he was supposed to do in that context. What we are saying was fraud was outside of that context.
(Feb. 24, 2012, P.9, L. 1-10) (OD)[4] Reply Ex. 3.

The Court still has some concerns with respect to plaintiff's sixth

[3] The Plaintiff states, at this juncture, that the alleged fraud occurred outside of the attorney client context.

[4] The Plaintiff states, at this juncture, that the alleged fraud occurred outside of the attorney client context.

cause of action for fraud. What my concern is that the appellate case law that I found on the matter indicates that when allegations of fraud comprise essentially the same as those in the allegations for legal malpractice are the same, that there is no place for fraud cause of action. Let me ask for offer of proof with respect to th e fraud cause of action. What is different about the facts with respect to fraud as opposed to the other?
(Feb. 24, 2012, P. 29, L. 3-12) (Judge Nervo) Reply Ex. 3.

Well, I think that I can plead them in the alternative. In other words, offer of proof can be Mr. Placeres represented Mr. Borges and assuming he did he committed malpractice. That is, what he did was so bad, so subpar, malpractice. If you find that he didn't represent Mr. Borges but he continually represented that he did than that is fraud. If Mr. Placeres took the position that, no, he wasn't represented by this notario, which of course would get his immigration case reopened, but he wasn't represented by my business associate. He was represented by me, I was his lawyer then and it transpires that in fact that is not true, that is not malpractice. That is fraud.
(Feb. 24, 2012, P. 29, L. 13-25) (OD) Reply Ex. 3.

Well, if the court makes a determination that Mr. Placeres was in fact acting as counsel then the only issue would be one of negligence.
(Feb. 24, 2012, P. 30, L. 2-4) (Judge Nervo) Reply Ex. 3.

With regard to the representation of him before the agencies and the legal work he did, the representations and the actions taken by Mr. Placeres subsequently in altering documents in submission to the disciplinary committee in opposition to Mr. Borges' motion to reopen was clearly fraud. I don't know how you can say that a lawyer forging documents and making deliberate false statements about his client in order to, for whatever purpose you, know, in this case to, you know, ameliorate himself before the committee and my clients to reopen, that is fraud.
(Feb. 24, 2012, P. 30, L. 5-15) (OD) Reply Ex. 3.

I don't know how you can split that hair and say that is not malpractice or why you would.
(Feb. 24, 2012, P. 30, L. 16-17) (Judge Nervo) Reply Ex. 3.

Well, I would assume that the defense would say that he is no longer acting as his attorney at this point.
(Feb. 24, 2012, P. 30, L. 18-20) (OD) Reply Ex. 3.

> Right. One of the elements of fraud is also a detrimental reliance which in this case would necessarily also give rise to additional damages. Where is the detrimental reliance in the first instance which gave rise to additional damages?
> (Feb. 24, 2012, P. 31, L. 3-7) (Judge Nervo) Reply Ex. 3.
>
> Well, I think that I relied on, you know, Mr. Placeres as an immigration attorney, that he would tell the truth. P. 31, L. 8-10.
> (Feb. 24, 2012, P. 31, L. 8-10) (OD) Reply Ex. 3.
>
> Well, you can rely on any attorney. Isn't that malpractice? That is legal malpractice, failing to tell your client the truth about the case, about the law.
> (Feb. 24, 2012, P. 31, L. 11- 14) (Judge Nervo) Reply Ex. 3.
>
> Telling anybody else a mistruth. Not your client. But going to somebody else.
> (Feb. 24, 2012, P. 31, L. 15-16) (OD) Reply Ex. 3.
>
> That would be a fraud on a third party. That wouldn't be a fraud on your client. Any detrimental reliance on the party who is allegedly damaged and a change in position by that party.
> (Feb. 24, 2012, P. 31, L. 17-20) (Judge Nervo) Reply Ex. 3.
>
> Judge, if I could ask if I could have the weekend to look at this issue, and address it with you Monday?
> (Feb. 24, 2012, P. 31, L. 21-23) (OD) Reply Ex. 3

The Plaintiff was permitted to submit a pre-trial memorandum on the fraud and malpractice causes of action. After five days of trial, and after the Plaintiff submitted all of its evidence, the Plaintiff alleged to the court that he had met his burden of establishing a claim for fraud. He argued:

> The Plaintiff has shown that, certainly viewing the acts and the evidence thus far in the light most favorable to the Plaintiff, that the Defendant made numerous representations to the Plaintiff, that he was going to be acting as his attorney by signing various immigration forms saying he was his lawyer, that he made those with the knowledge that he would not be doing any of the legal

> work on the plaintiff's case, that he made those with the intention that the Plaintiff would rely on those, that the Plaintiff did rely on those, and that he relied on them to his detriment in that his immigration case was essentially lost as a result of the fraud and misrepresentation by the defendant that he would be acting as his attorney. Those are separate from the acts alleged in the malpractice claim, and so I do not think that cause of action should be dismissed.
> (Mar. 1, 2012, P. 18, L. 17-25; P. 19, L. 1-16) (OD) Reply Ex. 4

The court considered the Plaintiff's argument, and dismissed the fraud claim.

> With respect to the defendant's motion to dismiss the plaintiff's sixth cause of action for fraud, the motion is granted. The court finds that **there are no facts that have been demonstrated or proven that are separate and apart from those set forth which would establish the plaintiff's claim for malpractice**, nor are there any damages established or set forth that would be separate and apart from those alleged for the damages sustained as a result of any legal malpractice.
> (Mar. 1, 2012, P. 19, L. 17-25; P. 20, L. 1-2) (Judge Nervo) Reply Ex. 5

There simply can be no credible dispute that every act complained of by the Plaintiff regarding the Defendant's Legal Representation and Ethics Defense was litigated and determined before the civil court.

B. Post-Judgment Bankruptcy Conduct

The Plaintiff alleges that the Defendant hid the existence of the malpractice claim, and hid income and assets, but cites no evidentiary support for his assertion. There is no dispute that the attorney that served as trial counsel, Brian Robinson, did not file a notice of appearance, and appeared as "of counsel" to Defendant's prior lawyer, Jose Luis Torres. Rule 7056.1 Response Paragraphs 41. Although Mr. Robinson has submitted a Declaration to the Court that states he was hired and paid directly by the Defendant, and Mr. Robinson had no professional affiliation with Mr. Torres, the Plaintiff correctly points out that Mr. Robinson did state on the record in the

action that he was of counsel to Mr. Torres. Rule 7056.1 Response Paragraphs 42. It is alleged by the Plaintiff that Mr. Robinson committed malpractice when he failed to object to the submission of damages for emotional distress to the jury. Rule 7056.1 Response Paragraphs 42.

      The Defendant did not list a malpractice claim in his bankruptcy schedules. When asked if he has such a claim, he said no. Rule 7056.1 Response Paragraphs 49. His bankruptcy attorney did not advise him to schedule such a claim before he filed his bankruptcy case, and the Defendant did not believe he had such a claim when his bankruptcy case was filed. The Defendant testified, pursuant to a line of questioning by the Plaintiff at his Section 341 meeting, that he **could** have a claim. Rule 7056.1 Response Paragraphs 39. But his first response to the questioning was that no such claim existed. See Plaintiff's Exhibit J, Response to Summary Judgment, at Page 71.

      The Defendant also alleges that he has listed all of his income and assets in his petiton and schedules, and that these documents are accurate and true. The Plaintiff was unable to submit any evidence that disputes these assertions. The evidence submitted by the Defendant included a Declaration from his bankruptcy lawyer attesting to the fact that she never advised him of a potential malpractice claim. The Defendant submitted sworn statements, and copies of some of his tax returns since 1990, demonstrating that he has not earned more than $60,000 a year since at least 1990, and many years before he began representing the Plaintiff. The Plaintiff did not submit any evidence to dispute these factual assertions, and the Debtor's facts should be deemed admitted by the Court. See Rule 7056.1 Response Paragraphs 57-60.

# ARGUMENT

## POINT I

## DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS I AND IV

The Plaintiff failed to submit any admissible evidence in opposition to the Defendant's motion for summary judgment on Counts 1 and 4 of the Complaint. In his response the motion, he argues that the Defendant's bankruptcy petition should be dismissed pursuant to Bankruptcy Code Section 707 because the Defendant (1) has not repaid his debt to Plaintiff; (2) has provided inconsistent testimony about his employment history for the past 10 years; (3) has not provided a candid and credible account of his income and assets; and (4) has failed to acknowledge the true value of a civil action for malpractice against Defendant's former attorneys. The Plaintiff objects to the discharge of the Judgment, pursuant to Bankruptcy Code Section 727, on a similar ground: he argues that the Defendant should be denied a discharge of all debt because he intentionally omitted a potential malpractice claim from his schedules, and misled the Chapter 7 Trustee about the veracity of the claim. The Plaintiff's opposition to the Motion is solely supported by conjecture and unsubstantiated allegations, and should not be considered by the Court.

The Defendant is entitled to a discharge unless one of the enumerated grounds for denial of discharge is proven under Section 727. It is well-settled that " Generally, a denial of discharge pursuant to section 727 is characterized as an extreme remedy that "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." In re Cacioli, 463 F.3d 229, 234 (2d Cir. 2006) (citations omitted). The burden of persuasion rests with the objecting party to show by a preponderance of the evidence that the Debtor is not

entitled to discharge. In re Steinberg, 2016 Bankr. LEXIS 1944, at *15-16 (Bankr. S.D.N.Y. May 5, 2016) (citations omitted). No such credible evidence was presented by the Plaintiff.

Moreover, the Defendant set forth, in detail, the law governing the Court's consideration of requests to dismiss a case under Section 707(a) and set for the grounds for granting such extreme relief. It does not appear that the Plaintiff disputes the applicable law cited by the Defendant: he simply asks the Court to infer that Plaintiff is not telling the truth. It is respectfully submitted that the Plaintiff's unsupported allegations do not defeat the relief sought by the Defendant.

The Defendant does not dispute that he can not satisfy a judgment of $1,193,802, and he never has had the ability to do so. He provided the Court with tax returns that demonstrate he has always had a modest income, and has not changed his lifestyle for decades. The discrepancy cited about the Defendant's employment history is not material to the issue raised – whether the Defendant's bankruptcy filing was done in bad faith or is an abuse of the bankruptcy process. The ambiguity cited by the Plaintiff occurred 10 to 15 years ago, and has no bearing on the Defendant's current financial position. The Plaintiff was unable to submit any evidence to support his contentions because not such evidence exists: the Defendant's schedules and disclosures to the Court, the Chapter 7 Trustee, and creditors was truthful and accurate.

Moreover, in support of the Defendant's assertion that his income has not significantly changed in the past, he attached his tax returns for the years 2015, 2014, 2013, 2012, 2011, 2009, 2004, 1997, and 1990. The highest business income the Debtor had during this period was $55,479 in 1997. Since 2012, the highest income the Defendant has had is $25,890. Despite this documentary evidence, the Plaintiff asks the Court to infer that the Defendant is hiding assets

since he has traveled internationally and has been represented by attorneys for the past 12 years. This inference is requested even though the Plaintiff admits in his response to the Defendant's Statement of Undisputed Facts that he does not have any knowledge or information to respond to the Defendant's financial condition. There is simply no admissible evidence or credible argument to support the Plaintiff's assertions that the Court should infer any bad faith or wrongdoing by the Defendant.

Lastly, the Plaintiff does not provide a valuation of the alleged malpractice claim nor explains the likelihood that the Defendant could be successful on the claim. In the Rule 2004 testimony cited by the Plaintiff, the Defendant says he does not believe he has a claim for malpractice since he would have been unable to pay even the $235,355 for loss of employment that was awarded to Plaintiff. In order to be successful in a malpractice action, the claimant must prove that but for the actions of an attorney, the claimant would not have been harmed. In this case, the Defendant would have been rendered insolvent even without the non-pecuniary portion of the judgment. Tellingly, the Plaintiff brought this malpractice claim to the attention of the Defendant's Chapter 7 trustee, and the Trustee decided against pursing a malpractice claim.

The only documents the Plaintiff attaches in support of his position that the Defendant is hiding assets are newspaper articles and an excerpt from the Defendant's Section 341 meeting and Rule 2004 exam, where he testifies that he doesn't believe he has a malpractice claim. The Defendant submits that this evidence does not meet the standard necessary to prevent the Debtor from obtaining his fresh start and discharge of debt, and certainly does not support a dismissal of his case. The news articles do not support the Plaintiff's contentions that the Defendant is hiding assets, or avoiding income, and are not admissible evidence to support these contentions.

Even if the articles are admissible, they do not indicate that the recognition received by the Defendant had any corresponding monetary benefits.

For these reasons, the Plaintiff has not met his burden of proving that the Defendant is not entitled to a discharge and should have his case dismissed. Even considering the evidence in the light most favorable to the Plaintiff, the Defendant has established that there is no cause as defined by Section 707(a) to dismiss the Defendant's bankruptcy petition, and there is certainly no evidence presented that the Defendant should be denied a discharge of all debt under Section 727. Accordingly, the Court should determine that there are no material issues of facts as to Count I and IV, and find that the Defendant is entitled to summary judgment on these counts.

## POINT II

## THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON COUNT 2 OF THE COMPLAINT

The Plaintiff asserts that the Defendant may not discharge the debt owed to him because it arose from fiduciary fraud under Bankruptcy Code Section 523(a)(6). The fraud he claims is unclear, since the adversary complaint lacks sufficient specificity to plead fraud. The complaint states that the Defendant's fraud and malfeasance both during and after the immigration case, at paragraph 83, and his alleged failure to be honest about the facts of his representation, at paragraph 84, constitute fraud. He cites the same arguments, in paragraphs 85 through 89, that were raised in the Civil Action during five days at trial. He repeats the same argument that he raised before the Disciplinary Committee and the Civil Court: that the Defendant did not, in fact, perform legal work on the Plaintiff's case.

For the reasons recently summarized in In re Salim, 2015 Bankr. LEXIS 815, at *28-29,

the Plaintiff may not try to relitigate the same issue he tried to prosecute and lost before the Civil Court:

> Collateral estoppel and issue preclusion prevent "parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding. Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002). A judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n.5, (1979) In other words, "'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" Rahman v. Park (In re Park), 2011 Bankr. LEXIS 1339, 2011 WL 1344495, at *4 (Bankr. E.D.N.Y. Apr. 8, 2011) (quoting Leather v. Ten Eyck, 180 F.3d 420, 424 (2d Cir. 1999)).

In re Salim, 2015 Bankr. LEXIS 815, at *28-29 (Bankr. E.D.N.Y. Mar. 16, 2015). As set forth in detail above, the assertion that the Defendant's conduct was fraudulent was fully briefed and denied by the Civil Court. In fact, the Plaintiff conceded to the Civil Court that if the court found that the Defendant was the Plaintiff's lawyer, he had a malpractice, not a fraud, claim. Ex. 3. The court made that finding, and the Plaintiff may not attempt to reargue and relitigate the same claim and same argument again after he obtained a judgment on the same facts and issues raised before the Civil Court and that resulted in Judgment. This is especially true in this case, where the statute of limitations on a fraud claim for conduct that occurred in 1998 and 2003 has long expired.

The Plaintiff correctly points out that there is authority in the Second Circuit for the proposition that an attorney that commits fraud may be found guilty of fiduciary fraud without requiring a technical or express trust. See, Andy Warhol Found. For Visual Arts, Inc. V. Hayes, 183 F.3d. 162 (2d Cir. 1999). But there is no doubt that for a debt to fall within the purview of

this statute, the debt must have arisen while the attorney served in the capacity as an attorney for the client. The Plaintiff concedes that the fraud complained of occurred outside of the context of the attorney client relationship. See Ex. 3 at P. 8, 9. Therefore, the fiduciary fraud claim can not prevail.

Finally, in addition to the foregoing, there was no evidence submitted by the Plaintiff to support his allegation of fraud. No such finding has ever been made, and the Plaintiff has never been able to produce any evidence of fraudulent conduct by the Defendant, either before this Court or the Civil Court. For these reasons, the Defendant is entitled to summary judgment on Count II of the Complaint.

**POINT III**

**THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON COUNT 2 OF THE COMPLAINT**

The Plaintiff asserts that the debt due is the result of the Defendant's willful and malicious acts and should not be discharged under Bankruptcy Code Section 523(a)(6). The Plaintiff alleges that since a jury found that Defendant, through Ivan, instructed the Plaintiff not to attend the February 1998 hearing, this instruction was a willful and malicious act. The Plaintiff further argues that Defendant's answer to the disciplinary committee complaint was a willful and malicious act. The Plaintiff also argues, without providing supporting evidence, that after the immigration case was completed, the Defendant admitted that his answer to the disciplinary committee was false. Based upon these assertions, the Plaintiff asks the Court to find that the Defendant's acts were willful, since the injury he suffered was likely to occur.

The Plaintiff ignores the Defendant's arguments, and does not provide any evidence to

oppose the Defendant's contentions. The Plaintiff does not rebut the Defendant'slogical assertion that the instruction not to appear in court was part of a legal strategy, and he believed his response to the Disciplinary Committee was truthful and accurate. In addition, the Defendant did not accuse the Plaintiff of a fraudulent marriage. His response to the committee stated the following: "I withdrew from further representation on his behalf when I believed I would encounter ethical problems if I presented this marriage before the Immigration & Naturalization Service."

There is no evidence or logical argument presented by the Plaintiff to demonstrate that the Defendant intentionally engaged in any conduct that he believed would cause harm to the Plaintiff. It is undisputed that the Defendant never met the Plaintiff or his wife and that the Defendant learned right before the hearing that the Plaintiff got married. During the trial before the Civil Court, the Plaintiff testified that it was Ivan who first suggested he marry his girlfriend. As a result, the Plaintiff's concern about the bona fides of the marriage were not unreasonable.

The Plaintiff has not overcome the Defendant's assertion that he did not engage in willful behavior, or create deliberate or intentional injury. The Plaintiff has not met his burden of establishing both willful and malicious conduct, by a preponderance of the evidence, by the Defendant. The only available evidence supported a finding of legal malpractice, and nothing more. There is simply no evidence to support a finding that the Defendant's failure to oversee Ivan, and render the proper legal advice, resulted from his intent to injure the Plaintiff. For these reasons, the Defendant is entitled to summary judgment on Count III of the Complaint.

## CONCLUSION

Based upon the foregoing, the Defendant asserts that the Plaintiff has failed to prove his

claims, on all counts, and the Defendant should be granted summary judgment, and grant such other relief as the Court deems just.

Dated: May 27, 2016
　　　　Queens, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/Norma E. Ortiz*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Norma E. Ortiz
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Martha de Jesus
　　　　　　　　　　　　　　　　　　　　　　　　　　　　ORTIZ & ORTIZ, LLP
　　　　　　　　　　　　　　　　　　　　　　　　　　　　32-72 Steinway Street, Suite 402
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Astoria, New York 11103
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Tel. (718) 522-1117
　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*