UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
In re:                                        :
                                              :      Chapter 7
ALFRED PLACERES,                              :      Case No.: 15-10691 (SMB)
                                              :
                          Debtor.             :
-------------------------------------------------X
JOSE BORGES,                                  :
                                              :
                          Plaintiff,          :
                                              :
          – against –                         :      Adv. Pro. No.: 15-01356 (SMB)
                                              :
ALFRED PLACERES,                              :
                                              :
                          Defendant.          :
-------------------------------------------------X

## MEMORANDUM DECISION RESOLVING
## MOTIONS FOR SUMMARY JUDGMENT

**A P P E A R A N C E S:**

Law Office of Paul O'Dwyer, P.C.
*Attorney for Plaintiff*
134 West 26th Street, Suite 902
New York, New York 10001

          Paul O'Dwyer, Esq.
                 Of Counsel

ORTIZ & ORTIZ, LLP
*Attorneys for Defendant*
32-72 Steinway Street, Suite 402
Astoria, New York 11103

          Norma E. Ortiz, Esq.
                 Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

          The plaintiff Jose Borges commenced this adversary proceeding against

the debtor and defendant Alfred Placeres to dismiss his chapter 7 case, determine the

dischargeability of Placeres' debts owed to Borges and deny Placeres a general

discharge.  Placeres moved for summary judgment on all claims and Borges cross-

moved for partial summary judgment on his non-dischargeability claim under

Bankruptcy Code § 523(a)(6).  As more fully discussed below, the Court disposed of all

but one of the claims from the bench, reserving decision on Placeres' motion for

summary judgment dismissing Borges' non-dischargeability claim brought under §

523(a)(4).  Having considered the supplemental briefing requested from the parties, the

Court grants partial summary judgment dismissing the § 523(a)(4) claim.

## BACKGROUND [1]

Although both sides have moved for summary judgment, the facts are hotly

contested.  Borges is a native of Venezuela who originally came to the United States in

1996 as a nonimmigrant B-2 Visitor with temporary authorization to remain in the

country until June 12, 1997.  (*See Decision and Order of the Immigration Judge*, dated

Mar. 10, 2003 (the "*Immigration Court Order*"), at 1 (ECF Doc. # 12).)[2]  After staying

beyond the authorized period, Borges received a Notice to Appear, dated July 24, 1997,

regarding the commencement of immigration removal proceedings.  (*Id.*)  At three

separate hearings in August, September and December of 1997, Borges appeared *pro se*

before the Immigration Court in Newark, New Jersey, and was granted an adjournment

at each hearing because he was unrepresented.  (*Local Bankr. Rule 7056-1 Plaintiff's*

---

[1]         "ECF" refers to the electronic docket in this adversary proceeding, and "ECF/Main Case" refers to the electronic docket in Placeres' bankruptcy case.

[2]         The *Immigration Court Order* is attached as Exhibit 13 to the *Declaration of Norma E. Ortiz in Support of Defendants' Motions for Summary Judgment*, dated May 27, 2016 (the "*Ortiz Declaration*") (ECF Doc. # 11).

*Response to Defendant's Statement of Undisputed Material Facts*, dated June 17, 2016

("*7056-1 Response*"), at ¶ 3 (ECF Doc. # 17);[3] *see also* Transcript of hearing held Feb. 27,

2012 ("Tr. (2/27/12)") at 19-20 (ECF Doc. # 12).)[4]  After the December hearing, and

upon the Immigration Judge's express direction, Borges sought counsel to represent

him at the next hearing scheduled for January 27, 1998 (the "Fourth Hearing").  (*7056-1*

*Response* at ¶ 3.)

Placeres is an attorney licensed to practice law in the State of New York.  (*Id.* at ¶

1.)  On January 10, 1998, Borges went to the offices of Entra America, a paralegal service

firm owned and operated by Adela Ivan who claimed to be Placeres' paralegal.  (*Id.* at

¶ 4; Tr. (2/27/12) at 21.)  Although Borges never met or spoke directly with Placeres,

Ivan told him that Placeres would represent him in the Immigration Court proceedings

and before the Immigration and Naturalization Service ("INS").  (*7056-1 Response* at

¶¶ 5−6.)  Shortly before the Fourth Hearing, however, Ivan informed Borges that

Placeres would not appear with him at the hearing.  (*Id.* at ¶ 8.)  Instead, Ivan provided

Borges with a motion to change venue from the Immigration Court in New Jersey to the

Immigration Court in New York (the "Venue Motion"), and instructed him to present it

to the Immigration Court at the Fourth Hearing.  (*Id.* at ¶ 7.)

Borges appeared unrepresented at the Fourth Hearing on January 27, 1998, and

provided the Immigration Court with a copy of the Venue Motion.  (*Id.* at ¶ 9.)  The

---

[3]     Unless otherwise noted, citations to the *7056-1 Response* indicate that Borges has admitted the
statements made in Placeres' *Local Bankr. Rule 7056.1 Statement of Undisputed Material Facts*, dated
May 27, 2016 (the "*7056-1 Statement*") (ECF Doc. # 12).

[4]     Excerpts of Tr. (2/27/12) are attached as Exhibit 2 of the *Ortiz Declaration*.

Immigration Judge denied the Venue Motion and directed Borges to appear for another hearing on February 3, 1998 (the "Fifth Hearing"), warning him that a failure to appear would result in the issuance of a deportation order. (*Id.* at ¶¶ 10–11.)

A few days before the Fifth Hearing, on January 29, 1998, Borges married Julie LaMarca, a U.S. citizen. (*Id.* at ¶ 14.) Borges and his wife brought birth certificates, passports and other documents to Ivan at Entra America in order to complete the requisite paperwork to complete a green card application (Form I-130) and permanent residency application (Form I-485). (*Id.* at ¶ 14; *see also* Tr. (2/27/12) at 30.) While at Entra America's office, Borges and LaMarca signed various forms, which Borges contends were pre-signed in Placeres' name and pre-filled with Entra America's phone number and P.O. Box address. (*Declaration of Plaintiff*, dated June 17, 2016 ("*Borges Declaration*") at ¶ 6 (ECF Doc. # 20).)[5]

Additionally, Ivan—either on her own or pursuant to Placeres' instructions— directed Borges not to appear at the Fifth Hearing, explaining that his green card application obviated the need for him to appear. (*Compare 7056-1 Response* at ¶ 12, *with 7056-1 Statement* at ¶ 12.) Ivan further cautioned him that he would be deported if he attended the Fifth Hearing. (*Borges Declaration* at ¶ 5; *see also Plaintiff's Complaint to Disciplinary Committee*, dated Jan. 8, 2003 ("*Ethics Complaint*") at 3 (ECF Doc. # 20).)[6] As a result, neither Borges nor Placeres appeared at the Fifth

---

[5]     The *Borges Declaration* is attached as Exhibit Q to the *Declaration of Paul O'Dwyer*, dated June 17, 2016 ("*O'Dwyer Declaration*") (ECF Doc. # 20).

[6]     The *Ethics Complaint* is attached as Exhibit A to the *O'Dwyer Declaration*.

Hearing, and the Immigration Court entered an *in absentia* deportation order against

Borges (the "*In Absentia Order*").  (*7056-1 Response* at ¶ 13.)

In April 1998, Borges received a notice from the INS regarding his immigration

status.  (*Id.* at ¶ 15; *see also Borges v. Gonzales*, 402 F.3d 398, 402 (3d Cir. 2005)

("*Borges Appeal*").)  The parties dispute the exact contents of the INS notice, (*compare*

*7056-1 Response* at ¶ 15 *with 7056-1 Statement* at ¶ 15), but agree that the notice

informed Borges that he was subject to deportation to Venezuela.  (*7056-1 Response* at

¶ 15.)  Placeres asserts that he subsequently submitted a motion to reopen Borges'

removal proceedings (the "First Motion to Reopen"), although Borges disputes whether

it was Placeres who actually filed the motion.  (*Compare 7056-1 Response* at ¶ 16, *with*

*7056-1 Statement* at ¶ 16)[7]

In any event, the Immigration Court denied the First Motion to Reopen on June

10, 1998.  (*See Immigration Court Order* at 1.)  Despite the denial, Ivan falsely informed

Borges that the motion had been granted, (*7056-1 Response* at ¶ 20), apparently leading

Borges to believe that he was no longer subject to deportation.  (*See* Tr. (2/27/12) at 41.)

Borges asserts that he never received a copy of the decision, (*id.* at 35), and that he did

not discover he was still subject to deportation until nearly two years later.  (*7056-1*

*Response* at ¶¶ 20–21.)

In the meantime, Borges continued to work with Entra America on matters

related to his green card and permanent residency applications.  *See Borges Appeal*,

402 F.3d at 401.  These were filed, in error, with the INS in New York rather than the

---

[7]        Borges previously admitted that Placeres filed this motion.  (*See Ethics Complaint* at 3.)

INS in New Jersey.  Apparently unaware of the *In Absentia Order*, the New York INS office granted Borges an adjustment of status interview.  *Id.*

At a 1999 meeting to prepare for the interview, Ivan informed Borges that Placeres was no longer working with Entra America, and that another attorney with the firm, Jamal Jbara, would continue representing him.  (*7056-1 Response* at ¶ 22.) Placeres contends that his representation terminated at this point, but Borges disputes this assertion.  (*Compare 7056-1 Statement* at ¶ 22 *with 7056-1 Response* at ¶ 22.)  As he prepared Borges for the interview, Jbara advised Borges not to mention the *In Absentia Order* during the interview process.  *See Borges Appeal*, 402 F.3d at 402. Borges apparently believed that the order had been vacated anyway and complied with Jbara's instructions during his interview in February 2000.  *See id.*  As a result, Borges ultimately obtained approval of permanent resident status.  *See id.*

In April 2000, Borges planned to travel to Venezuela to visit his ailing mother *Id.*  He contacted Jbara to make sure he would be able to re-enter the United States because he had not received his green card, and discovered, apparently for the first time, that the *In Absentia Order* had not been vacated.  *Id.*  According to Borges, Jbara agreed to remedy the situation by filing a renewed motion to reopen his removal proceedings in New Jersey.  (*Borges Declaration* at ¶ 10.)

Borges changed lawyers in 2002.  Through his new counsel, he learned of various deficiencies in his immigration forms filed up to that point, and discovered other information suggesting that Placeres had not performed the actual legal work in connection with those matters.  (*Id.* at ¶ 11.)  As a result, Borges filed an ethics complaint

(the "*Ethics Complaint*") against Placeres with the Disciplinary Committee of the

Appellate Division of the Supreme Court of the State of New York, First Judicial

Department on January 8, 2003, and a motion to reopen the removal proceedings in the

Immigration Court and vacate the *In Absentia Order* on January 27, 2003 (the "Second

Motion to Reopen").  (*See Immigration Court Order* at 1.)  Finally, Borges filed a civil

action against Placeres and others on August 4, 2003 (the "Civil Action").  (*Verified*

*Complaint*, dated Nov. 17, 2003 (the "*State Court Complaint*") (ECF Doc. # 23).)[8]

### A.    The Disciplinary Proceedings–Part I

The *Ethics Complaint* charged that Placeres and Jbara had mishandled Borges'

immigration matters and lied to him.  Among other things, Placeres filed an improper

*Venue Motion,* failed to advise the INS when he filed the First Motion to Reopen that

Borges' adjustment of status application was pending, incorrectly told Borges not to

attend the Fifth Hearing and provided the wrong advice when he told Borges that he

could not be deported while his adjustment to status application was pending.  (*Ethics*

*Complaint* at 6.)

Placeres responded to the *Ethics Complaint* denying each of Borges' allegations.

(*Defendant's Answer to Disciplinary Complaint*, dated Mar. 11, 2004 ("*Disciplinary*

*Response*") (ECF Doc. # 20).)[9]  Placeres argued that it would have been illogical for him

to direct Borges not to attend the Fifth Hearing because Borges's absence would

---

[8]       The *State Court Complaint* is attached as Exhibit 1 to the *Declaration of Norma E. Ortiz in*
*Support of Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment*, filed on July 6,
2016 ("*Second Ortiz Declaration*").  It is not, however, filed on ECF.

[9]       The *Disciplinary Response* is attached as Exhibit B to the *O'Dwyer Declaration*.

necessarily have led to an *in absentia* deportation order. (*Id.* at 4.) Instead, Placeres suggested that Borges chose not to attend the Fifth Hearing simply to avoid missing work. (*Id.* at 6-7.) Placeres added that the defective *Venue Motion* was a strategic choice meant to delay Borges' deportation so that he could marry a U.S. citizen first, (*id.* at 3-4), but also stated that he withdrew from representation over ethical concerns that Borges's marriage was fraudulent. (*Id.* at 12.) As to the scope of his personal involvement in Borges' immigration matters, Placeres explained the P.O. Box *was* his own—not Entra America's—but that he only used it to handle certain types of correspondence. (*Id.* at 2.) Placeres also submitted various documents and receipts to the Disciplinary Committee further purporting to confirm his involvement in the case. (*7056-1 Response* at ¶ 34.) Placeres, however, has since admitted that the P.O. Box was not actually rented to him during that time, and that the receipts and documents he submitted were altered or falsified. (*Id.* at ¶¶ 34, 36.)

The Disciplinary Committee temporarily closed the *Ethics Complaint* pending resolution of the Civil Action described below.

### B.    The Second Motion to Reopen

In connection with the Second Motion to Reopen, Borges submitted Placeres Disciplinary Response, contending he was required by law to do so.[10] (*7056-1 Response* at ¶¶ 23-24; *Borges Declaration* at ¶ 14.) On March 10, 2003, the Immigration Court

---

[10]    Under *Matter of Lozada*, 19 I. & N. Dec. 637, 638 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988), a person who moves to reopen based upon ineffective assistance of counsel must, *inter alia*, detail the circumstances, inform former counsel of the allegations and submit any subsequent response with the motion. In addition, if the movant contends that the attorney acted unethically, he must show that a grievance has been filed or explain why not. *Id.*

denied the Second Motion to Reopen because it was untimely and Borges had not met

certain procedural requirements.  (*Immigration Court Order* at 2.)  Borges moved to

reconsider, but the Immigration Court again denied the motion on April 17, 2003.  (*See*

*Order of Board of Immigration*, dated Mar. 1, 2004 (the "*BIA Decision*"), at 1 (ECF Doc.

# 20).)[11]  Borges appealed the denial to the Board of Immigration Appeals (the "BIA").

(*Id.*)

On February 18, 2004, while the BIA appeal was pending, the Department of

Homeland Security ("DHS") arrested and detained Borges.  (*See 7056-1 Response* at

¶ 38.)  While Borges was detained, the BIA affirmed the denial of his Second Motion to

Reopen and referenced Placeres' Disciplinary Response noting that it contained "the

ring of truth."  (*BIA Decision* at 2.)  Specifically, the BIA agreed with Placeres that it

would have been illogical for him to instruct Borges not to attend the Fifth Hearing.

(*Id.*)  Borges then filed an appeal of the BIA's decision with the Third Circuit.

The Third Circuit reversed, ruling that Placeres' alleged fraud tolled the period

within which to make the Second Motion to Reopen, and remanded to the BIA to

determine whether fraud had been committed.  *Borges Appeal*, 402 F.3d at 408-09.  It

further held that "[i]f the BIA finds fraud and finds that, by virtue of equitable tolling,

the motion to reopen was timely filed, it is instructed to vacate the *in absentia* order of

removal so that Borges can apply for adjustment of status."  *Id.* at 409.  On remand, the

BIA vacated the *In Absentia Order*, (*7056-1 Response* at ¶ 28), and DHS ultimately

released Borges from custody on April 1, 2005.  (*Id.* at ¶ 38.)

---

[11]    The *BIA Decision* is attached as Exhibit N to the *O'Dwyer Declaration*.

### C.    The Civil Litigation

Prior to his arrest, Borges filed the Civil Action against Placeres, Ivan, Jbara, and

Entra America in the New York Supreme Court (the "State Court"), but by February

2012, the Civil Action had been dismissed or settled as to all defendants other than

Placeres.  (*Borges Declaration* at ¶¶ 29-30.)  Borges alleged that Placeres had

committed legal malpractice, fraud, negligence, breach of contract, negligent

supervision, intentional and negligent infliction of emotional distress and breach of

fiduciary duty, and sought compensatory, treble and punitive damages based upon his

handling of his immigration and deportation issues.  (*State Court Complaint* at ¶¶ 45-

85.)  Borges subsequently asserted that Placeres' false statements and submissions to

the Disciplinary Committee also constituted fraud.  (Transcript of hearing held Feb. 24,

2012 ("Tr. (2/24/12)") at 30.)[12]

With Placeres as the only remaining defendant, the State Court *sua sponte*

dismissed Borges's negligence, breach of contract, negligent supervision, intentional and

negligent infliction of emotional distress and breach of fiduciary duty claims as

duplicative of his legal malpractice claim.  (*Id.* at 10; *see also Complaint for*

*Determination of Dischargeability and Objecting to Debtor's Discharge Pursuant to*

*Sections 523 and 727 of the Bankruptcy Code*, dated Oct. 13, 2015 (the "*Adversary*

*Complaint*"), at ¶ 39 (ECF Doc. # 1).)  The State Court reserved decision whether to

dismiss Borges's fraud claim, (Tr. (2/24/12) at 10), but expressed skepticism as to

---

[12]    Excerpts of Tr. (2/24/12) are attached as Exhibit 3 of the *Second Ortiz Declaration*, but were not
filed on ECF.

whether Placeres' false statements and submissions to the Disciplinary Committee could constitute fraud against Borges.  (*Id.* at 29-31.)

The balance of the case went to trial before a jury.  At the close of testimony but before the case was sent to the jury, the State Court dismissed the fraud claim, finding that "there are no facts that have been demonstrated or proven that are separate and apart from those set forth which would establish [Borges's] claim for malpractice, nor are there any damages established or set forth that would be separate and apart from those as alleged for the damages sustained as a result of any legal malpractice." (Transcript of hearing held Mar. 1, 2012 ("Tr. (3/1/12)") at 19-20.)[13]  The jury returned a verdict against Placeres on the malpractice claim, (*see Verdict Sheet*, dated Mar. 2, 2012 (ECF Doc. # 12)),[14] and awarded $294,500 in damages for lost earnings and legal fees and $900,000 for pain and suffering.  (*Id.*)

Placeres appealed the resulting judgment to the Supreme Court, Appellate Term. Among other things, he argued that an award of nonpecuniary damages (here, $900,000 for pain and suffering) was generally unavailable to a plaintiff in an action for attorney malpractice.  *Borges v. Placeres*, 986 N.Y.S.2d 298, 300 (N.Y. App. Term 2014).  Placeres had, however, failed at trial to object to the evidence, jury instruction or verdict sheet relating to pain and suffering, and he consequently consented to the trial of the issue.  *Id.*  The Appellate Term, affirmed the judgment, *id.*, as did the Appellate Division agreeing that Placeres' "pain and suffering" argument had not been preserved,

---

[13]     Excerpts of Tr. (3/1/12) are attached as Exhibit 4 to the *Second Ortiz Declaration*, but were not filed on ECF.

[14]     The *Verdict Sheet* is attached as Exhibit 11 to the *Ortiz Declaration*.

*Borges v Placeres*, 2 N.Y.S.3d 75, 76 (N.Y. App. Div. 2014), and Placeres' motion for

leave to appeal to the Court of Appeals was denied on June 30, 2015. *Borges v.*

*Placeres*, No. 570722/06, 2015 (N.Y. App. Div. June 30, 2015).

### D.    The Disciplinary Proceedings–Part II

After the entry of judgment by the state trial court, the Disciplinary Committee

reopened the matter.  On July 22, 2015, it issued a formal admonition to Placeres based

on his violations of the Disciplinary Rules of the Code of Professional Responsibility

(the "Lawyer's Code").[15]  (Letter from Departmental Disciplinary Committee, dated July

22, 2015 (the "*Admonition Letter*") (ECF Doc. # 12).)[16]  The Disciplinary Committee

found that Placeres had neglected a legal matter entrusted to him by failing to appear at

the Fifth Hearing, which led to the *In Absentia Order*, in violation of DR 6-101(A)(3) of

the Lawyer's Code.  (*Id.*)  The Disciplinary Committee also determined that Placeres had

engaged in conduct that adversely reflected on his fitness as a lawyer in violation of DR

1-102(A)(7) of the Lawyer's Code by providing incomplete and inaccurate

representations regarding Borges' file.  (*Id.*)

### E.    The Bankruptcy Proceeding

On March 23, 2015, Placeres filed a chapter 7 petition in this Court.  Schedule B

listed total assets in the amount of $4,226.00, and Schedule F listed unsecured debt in

---

[15]    The Rules of Professional Conduct, promulgated as the Joint Rules of the New York Appellate
Divisions of the Supreme Court, superseded the Disciplinary Rules of the Code of Professional
Responsibility on April 1, 2009.  (*See* 22 NYCRR Part 1200.)  Placeres' actions, however, occurred before
the Rules of Professional Conduct became effective, and therefore the Disciplinary Committee apparently
evaluated his conduct under the Disciplinary Rules of the Code of Professional Responsibility.

[16]    The *Admonition Letter*, which appears to be incomplete, is attached as Exhibit 9 to the *Ortiz*
*Declaration*.

the sum of $1,292.832.00, mostly consisting of Borges' judgment.  (ECF/Main Case

Doc. # 1.)  His schedules did not list a malpractice claim that he had against his own

state court lawyer based upon his failure to object to the pain and suffering evidence and

jury instructions, and Placeres testified under oath at his section 341 meeting that he

had no reason to sue anyone for malpractice.  (Transcript of Creditor's Committee

Meeting held August 25, 2015 (the "*341 Transcript*") at 9-12 (ECF Doc. # 20).)[17]  He

subsequently filed an amended Schedule A/B that listed the malpractice claim in the

sum of $1.00.  (ECF/Main Case Doc. # 35.)

On October 13, 2015, Borges commenced this adversary proceeding seeking

dismissal of Placeres chapter 7 petition under 11 U.S.C. § 707 (Count I), a determination

that his debts to Borges were not dischargeable under 11 U.S.C. § 523(a)(4) (Count II),

(a)(6) (Count III) and (a)(7) (Count V), and the denial of Placeres' discharge under 11

U.S.C. § 727(a) (Count IV).  (*Adversary Complaint* at ¶ 72-107.)  Placeres moved for

summary judgment in his favor on all counts, (*Memorandum of Law in Support of

Defendant's Motion for Summary Judgment*, dated May 27, 2016 (ECF Doc. # 13)), and

Borges cross-moved for partial summary judgment on his claim under Bankruptcy Code

§ 523(a)(6).  (*Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for

Summary Judgment and in Support of His Motion for Partial Summary Judgment on

Count III of the Complaint*, dated June 16, 2016 (the "*Cross-Motion*") (ECF Doc. # 19).)

At the conclusion of oral argument, the Court granted summary judgment from

the bench dismissing Count I, denied summary judgment as to Counts II and IV, and

---

[17]     The *341 Transcript* is attached as Exhibit I to the *O'Dwyer Declaration*.

Borges conceded that Count V should be dismissed.[18]   (*Cross-Motion* at 39.)   The Court

requested supplemental briefing in connection with the remaining claim under §

523(a)(4), Count II, and reserved decision.

## DISCUSSION

Section 523(a)(4) exempts from discharge, *inter alia*, any debt "for fraud or

defalcation *while acting in a fiduciary capacity*."   11 U.S.C. § 523(a)(4) (emphasis

added).   "Exceptions to dischargeability are 'narrowly construed against the creditor's

objections, and confined to those plainly expressed in the [Bankruptcy] Code.'"

*Bethpage Fed. Credit Union v. Furio* (*In re Furio*), 77 F.3d 622, 624 (2d Cir. 1996)

(quoting *Household Finance Corp. v. Howard (In re Howard),* 73 B.R. 694, 700

(Bankr. N.D. Ind. 1987)); *see Kawaauhau v. Geiger,* 523 U.S. 57, 62 (1998) (stating that

"exceptions to discharge 'should be confined to those plainly expressed'") (quoting

*Gleason v. Thaw,* 236 U.S. 558, 562 (1915)).   The principle of narrow construction

strikes the balance between penalizing specific conduct deemed undesirable and

promoting the honest debtor's fresh start.   *The Andy Warhol Foundation for Visual*

*Arts, Inc. v. Hayes* (*In re Hayes*), 183 F.3d 162, 167 (2d Cir.1999).   The creditor

asserting the non-dischargeability of a debt bears the burden of proof by a

preponderance of the evidence.   *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991).

Borges bases his § 523(a)(4) claim on false statements and submissions Placeres

allegedly made to the Disciplinary Committee.   The Disciplinary Committee proceedings

took place well after his representation of Borges ended, and Placeres argues that he no

---

[18]      The audio of the oral argument and bench rulings can be accessed through ECF Doc. # 31.

14

longer owed any fiduciary obligations to Borges when the challenged statements and submissions were made.  Federal law determines whether a debtor acted in a fiduciary capacity, although state law may influence the scope of the debtor's fiduciary obligations.  *See Hayes*, 183 F.3d at 166-67.  Assuming without deciding that Placeres' statements and submissions met the requirements for fraud, Borges' § 523(a)(4) claim must fail because Placeres did not commit the offending conduct while acting in a fiduciary capacity.

An attorney-client relationship may qualify as a fiduciary relationship for § 523(a)(4) purposes even in the absence of a technical or express trust.  *Hayes*, 183 F.3d at 168.  Here, there is no dispute that Placeres acted as Borges's attorney and served in a fiduciary capacity for at least some period of time.  Under § 523(a)(4), however, the fiduciary relationship must exist *at the time* of the alleged fraudulent conduct.  *See, e.g.*, *Hunter v. Philpott*, 373 F.3d 873, 877 (8th Cir. 2004) ("In the § 523(a)(4) context, the fiduciary relationship must preexist the incident creating the contested debt and apart from it.") (citations omitted); *In re Yoshida*, 435 B.R. 102, 110 (Bankr. E.D.N.Y. 2010) ("The first step is to establish a fiduciary relationship. . . . The second step is to ascertain if defalcation occurred during that relationship.").

Although the parties dispute the precise date when Placeres' representation of Borges terminated, it occurred before Borges initiated the *Ethics Complaint*.  Under New York law, "the attorney's fiduciary duty to the client necessarily ends when the representation ends."  *Access Point Med., LLC v. Mandell*, 963 N.Y.S.2d 44, 47 (N.Y. App. Div. 2013); *accord Shaub & Williams, L.L.P. v. Augme Tech., Inc.*, No. 13 Civ. 1101(GBD), 2014 WL 625390, at *3 (S.D.N.Y. Feb. 14, 2014).  Placeres was no longer

15

Borges' attorney when Borges filed the *Ethics Complaint*, and Borges has failed to identify a legal basis for his contrary argument.  Furthermore, even though an attorney has a continuing duty to a former client not to disclose confidential and secret communications, *Solow v. Grace & Co.,* 632 N.E.2d 437, 440 (N.Y. 1994); *Greene v. Greene*, 391 N.E.2d 1355, 1358 (N.Y. 1979), an attorney sued by a former client may reveal confidences and secrets to defend himself against an accusation of wrongful conduct.  *Nesenoff v. Dinerstein & Lesser, P.C.*, 786 N.Y.S.2d 185, 186 (N.Y. App. Div. 2004) (citing to Code of Professional Responsibility DR 4-101(C)(4)).

Here, Borges filed a grievance with the Disciplinary Committee against Placeres, and accused him of engaging in wrongful conduct.  Placeres was entitled to respond, and did not owe Borges a fiduciary duty to refrain from defending himself.  This does not mean that Placeres was entitled to commit fraud, but that fraud would breach a common law duty, not a fiduciary duty.  Borges may be able to prove that the debt arose from willful and malicious conduct on Placeres' part or that Placeres' should not receive a general discharge, but he cannot assert a claim under § 523(a)(4) for the reasons stated.  In light of this conclusion, it is unnecessary to address Placeres' argument that the fraud claim is precluded by the state court's post-trial dismissal of Borges' fraud claim.

In the post-argument briefing, Borges contended that even if Placeres was entitled to use confidential or secret information to defend himself, his actions went beyond the scope of the defense exception because his statements and submissions were not necessary to defend against Borges's accusations, *see Meyerhofer v. Empire Fire & Marine Ins. Co.*, 497 F.2d 1190, 1194-95 (2d Cir. 1974), were false, contained

16

information that was damaging to Borges and irrelevant to the disposition of the

complaint.[19]  (*Supplemental Brief* at 7-8.)  Instead, Placeres could have simply admitted

to the Disciplinary Committee that Ivan had performed all of the work in connection

with Borges' immigration case.  (*Id.* at 8.)

      This is a new theory; Borges always contended until the *Supplemental Brief* that

the information Placeres disclosed was false, not that it was true but secret or

confidential.  Count II alleges that Placeres lied to the Disciplinary Committee about his

representation of Borges knowing that his lies would get back to the Immigration Court

on the Second Motion to Reopen and adversely affect Borges' immigration case.

(*Adversary Complaint* at ¶¶ 85-87.)  The Court will not entertain this belated argument

under these circumstances.

      Accordingly, Placeres is granted partial summary judgment dismissing Count II.

The parties are directed to settle an order on notice that reflects the disposition of the

motion and cross-motion, and schedule a conference with the Court to fix a trial date.

Dated:  New York, New York
        December 29, 2016

           /s *Stuart M. Bernstein*
           STUART M. BERNSTEIN
         United States Bankruptcy Court

---

[19]    Borges specifically points to Placeres' various claims suggesting that he personally performed Borges's immigration work, his submission of altered documents and receipts, his claim that Borges chose not to attend the Fifth Hearing to avoid missing work and his belief that Borges's marriage was fraudulent.  (*Plaintiff's Post-Argument Memorandum of Law Regarding Defendant's Fiduciary Obligations to Plaintiff Under 11 U.S.C. § 523(a)(4)*, dated Aug. 23, 2016 ("*Supplemental Brief*"), at 2 (ECF Doc. # 28).)